**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

| | |
|---|---|
| **KOSTAS GIANNOULIAS,**<br>*Petitioner,*<br>v.<br>**FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,**<br>*Respondent.* | **No. 26-____**<br>*(to be assigned)* |

**PETITION FOR REVIEW**

Kostas Giannoulias, appearing individually and pro se, petitions this Court under 28 U.S.C. §§ 2342(3)(A), 2343, and 2344 and Federal Rule of Appellate Procedure 15 for review of the Federal Motor Carrier Safety Administration's July 9, 2026 final order granting Aurora Operations, Inc. a Waiver of Warning Device Requirements, including its Terms and Conditions ("Waiver No. 4"). The order, attached as Exhibit 1, became effective July 10 and remains effective through October 9, 2026.

This Petition is timely. The sixtieth day after July 9 was September 7, 2026, Labor Day; Federal Rule of Appellate Procedure 26(a)(1)(C) extends the filing period through September 8, 2026.

Venue lies in this Court under 28 U.S.C. § 2343 because Petitioner resides in Illinois. Jurisdiction lies under 28 U.S.C. § 2342(3)(A) because Waiver No. 4 is FMCSA's final order issued under chapter 313 of title 49.

Waiver No. 4 is final agency action: it immediately relieves Aurora and any qualifying Level 4 carrier invoking the email opt-in from 49 C.F.R. §§ 392.22(b), 393.25(e), and 393.95(f), and authorizes operation once FMCSA acknowledges the email or one business day passes. No further agency decision is required before a carrier may operate.

Waiver No. 4 was issued without the complete standardized evidence from Waiver No. 3. FMCSA signed Waiver No. 4 on July 9 and made it effective July 10, the day after Waiver No. 3 ended, even though Section IV.B allowed until August 8 for Waiver No. 3's complete term report. The schedule FMCSA imposed therefore guaranteed that the most complete required evidence from the preceding term would arrive after, not before, the continuation decision.

Petitioner is a party aggrieved under 28 U.S.C. § 2344. FMCSA gave him no public notice, docket, hearing, or other way to participate before issuing Waiver No. 4. On September 3, 2026, he requested an immediate stay, rescission or revocation, and participation in reconsideration or any successor-waiver process; FMCSA has not granted relief.

Petitioner regularly hauls interstate freight by commercial cargo van on the Dallas-Houston corridor, where Aurora publicly announced driverless operations, and on the Dallas-Oklahoma City and related corridors within Aurora's expanding autonomous freight network. He repeatedly drove those markets during Waiver

No. 4 and will continue accepting suitable freight while it operates. The order therefore exposes him, in a far lighter commercial vehicle, to the particularized roadside hazard of driverless Class 8 trucks using cab-mounted beacons instead of federally required warning triangles.

The grounds for review are that Waiver No. 4: (1) exceeds 49 U.S.C. § 31315(a)'s three-month, person-specific, unique-event authority by continuing an uninterrupted commercial-deployment program through serial waivers and promised reissuance; (2) creates a prospective class through its email opt-in mechanism even though Congress separately authorized relief for a "person or class of persons" under the exemption provision, 49 U.S.C. § 31315(b); (3) uses operative waiver relief to gather the evidence needed to justify that relief while evading the public, data-collection, safety-analysis, and reporting safeguards Congress prescribed for pilot programs in 49 U.S.C. § 31315(c); (4) disregards FMCSA's written-request and staff-review procedures in 49 C.F.R. §§ 381.210-381.215; and (5) was issued before Waiver No. 3's complete term report was due and rests on an unreasoned and unsupported equivalent-safety finding. Waiver No. 4 is arbitrary, capricious, in excess of statutory authority, and issued without observance of procedure required by law. 5 U.S.C. § 706(2)(A), (C), (D).

Petitioner respectfully requests that the Court vacate and set aside Waiver No. 4; remand to FMCSA; stay the order pending review; expedite proceedings

sufficiently to prevent the short-duration order and its promised reissuance from evading effective review; and grant any other appropriate relief.

Respectfully submitted,

Kostas Giannoulias
Petitioner, pro se
3851 Mission Hills Road Unit 210
Northbrook, IL 60062
kostas@haasefreightsystems.com
708-772-6738
Dated: September 8, 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

| | |
|---|---|
| **KOSTAS GIANNOULIAS,**<br>*Petitioner,*<br>v.<br>**FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,**<br>*Respondent.* | **No. 26-____**<br>*(to be assigned)* |

**RULE 15(c) LIST AND**
**CERTIFICATE OF SERVICE**

FMCSA created no public docket or proceeding for Waiver No. 4 in which third parties could be admitted. Pursuant to Federal Rule of Appellate Procedure 15(c), the following identifies every ascertainable nonrespondent entity addressed by, expressly covered by, or copied on the challenged order.

I certify that on September 8, 2026, I served each listed entity with a copy of the Petition for Review and Exhibit 1 by USPS Certified Mail, postage prepaid. I also sent each listed entity a courtesy copy by email.

**1.** Aurora Operations, Inc., Attn: Shelley Webb, Chief Legal Officer, 280 N. Bernardo Avenue, Mountain View, CA 94043; courtesy email: legal@aurora.tech.

**2.** Kodiak Robotics, Inc., Attn: Jordan Coleman, 1049 Terra Bella Avenue, Mountain View, CA 94043; courtesy email: jordan@kodiak.ai.

**3.** Waabi Logistics Inc., Attn: Joonsik Maing, 3005 W. Wintergreen Road, Lancaster, TX 75134; courtesy email: jmaing@waabi.ai.

Waiver No. 4 states that FMCSA "may publish" a list of carriers operating under the waiver. Petitioner asked FMCSA to identify every additional opt-in carrier. If FMCSA identifies another carrier, Petitioner will promptly supplement this list and provide notice.

Under 28 U.S.C. § 2344 and Federal Rule of Appellate Procedure 15(c), the circuit clerk serves Respondent FMCSA and the Attorney General of the United States with the Petition for Review.

Respectfully submitted,

______________________
Kostas Giannoulias
Petitioner, pro se
Dated: September 8, 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

# EXHIBIT 1

## CHALLENGED FINAL ORDER

**FMCSA Waiver of Warning Device Requirements No. 4**

Cover Letter and Terms and Conditions - July 9, 2026

EXHIBIT 1

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

Administrator

1200 New Jersey Ave, SE
Washington, DC 20590

July 9, 2026

Shelley Webb
Chief Legal Officer
Aurora Operations, Inc.
280 N. Bernardo Ave.
Mountain View, CA 94043

Dear Ms. Webb:

The Federal Motor Carrier Safety Administration (FMCSA) grants a limited waiver, subject to the attached terms and conditions, to Aurora Operations, Inc. (Aurora) from compliance with the warning device placement requirements in 49 CFR § 392.22(b), the steady-burning lamp requirement in 49 CFR § 393.25(e), and the requirements for the types and number of warning devices in 49 CFR § 393.95(f), to allow Aurora to use cab-mounted warning beacons in lieu of the warning devices required by 49 CFR § 393.95(f). This waiver is effective from 12:00 a.m. on July 10, 2026, through 11:59 p.m. on October 9, 2026.

This waiver covers Aurora's operation of Level 4 Automated Driving System (ADS) commercial motor vehicles (CMVs) subject to the Federal Motor Carrier Safety Regulations. This waiver also permits any other motor carrier to operate under the waiver, provided that it first notifies FMCSA in writing, certifying that it currently has cab-mounted warning beacons, the ability to comply with all terms and conditions of this waiver, and that it will comply with all terms and conditions of the waiver. FMCSA may publish on its website a copy of the waiver and a list of motor carriers operating under the waiver. Kodiak Robotics, Inc., USDOT No. 3172855, and Waabi Logistics Inc., USDOT No. 3906293, have provided written notification to FMCSA that they are also operating under the waiver.

Under 49 U.S.C. §§ 31136(e) and 31315(a), FMCSA may grant a waiver if it determines that it is in the public interest to grant the waiver and that the waiver is likely to achieve a level of safety that is equivalent to, or greater than, the level of safety that would be obtained in the absence of the waiver. FMCSA may grant a waiver for nonemergency and unique events, limited in scope and circumstances, for a period not in excess of three months. Although FMCSA previously denied Aurora's request for an exemption (89 FR 105675, December 27, 2024), FMCSA has now determined that it is in the public interest to issue a waiver, limited in scope and circumstances, that is likely to achieve a level of safety that is equivalent to, or greater than, the level of safety that would be obtained in the absence of the waiver.

FMCSA reviewed information provided by Aurora in support of its request for exemption. FMCSA has determined that the attached waiver is narrower in scope than the broad exemption request from Waymo LLC and Aurora that FMCSA previously denied. In this regard, the exemption request sought industry-wide regulatory relief whereby any motor carrier operating Level 4 ADS-equipped CMVs could operate under the waiver without any prior notice to FMCSA. In denying the exemption, FMCSA found that the applicants' request to "exempt a class of unspecified carriers using unspecified equipment on unspecified vehicles only further undermines the claimed likely equivalent level of safety." This waiver cures that deficiency, as it would apply to Aurora, and would not apply to other motor carriers operating Level 4 ADS-equipped CMVs unless they provide written notification to FMCSA and certify compliance with the waiver's terms and conditions.

Further, the waiver is narrower than the exemption request because it requires that operations occur primarily on the U.S. Interstate Highway System. In denying the exemption, FMCSA noted that "road curvatures or elevations may affect visibility of a beacon located in a fixed position on the cab." This waiver limits operations "primarily [to] the U.S. Interstate Highway System," where standardized road geometry minimizes the frequency of sharp curves and crests that could obstruct visibility. Moreover, the waiver's scope prohibits operations that would require a commercial driver's license endorsement (*e.g.*, tank vehicles, double/triple trailers) if a driver were present, as well as the transportation of passengers or hazardous materials.

In addition, the waiver includes technical specifications to resolve potential ambiguity. In denying the exemption, FMCSA stated that the application did not "provide sufficient details about the proposed alternative devices," particularly with the vague allowance for "any configuration of similar effectiveness." In contrast, Section III.B of the waiver mandates specific mounting, location, and photometric performance standards (SAE J595). The waiver also imposes additional requirements for when the beacons must activate and how long they must remain flashing. Further, the waiver does not allow for configuration flexibility outside the terms and conditions set forth in the waiver. Moreover, Section III.B.6 of the waiver requires that the beacons "be designed and installed with redundant power sources to prevent failure due to a single-point power failure," which FMCSA previously noted as a deficiency with the exemption application.

In denying the exemption, FMCSA also stated that Aurora's naturalistic study submitted in support of the application showed that a lower percentage of drivers responded to the beacons than to warning triangles in five of eight scenarios presented: daytime tests at left curve and straight locations, and nighttime tests at crest, right curve, and straight locations. However, under the waiver, the curve and crest scenarios would be present to a much more limited degree, since operations must occur primarily on the U.S. Interstate Highway System, and the differences in driver response at straight locations were immaterial (*i.e.*, less than four-tenths of one percent), according to the study. Moreover, as FMCSA noted, Aurora's study concluded that a warning beacon elicited a higher percentage of responses than warning triangles overall. FMCSA has noted in a research context "the historically unresolved questions of whether the use of such [warning] devices improves traffic safety and, if so, how and to what extent." (90 FR 1591, January 8, 2025). Without information on the level of safety the current regulatory requirements provide, the two studies submitted in support of Aurora's application reasonably

support a determination that motorists detect and respond to the beacons at a similar rate as existing warning devices under the terms and conditions imposed by this waiver.

Finally, the waiver addresses concerns about the lack of monitoring controls by requiring specific, detailed reporting requirements to allow FMCSA to monitor the safety performance of motor carriers operating under the waiver. In denying the exemption, FMCSA concluded that the application "lacks necessary monitoring controls to ensure highway safety." Section IV of this waiver implements these exact controls by requiring detailed crash and term reporting. Specifically, under Section IV.B, Aurora, and any other motor carriers operating under the waiver, must provide FMCSA with aggregate data on beacon activation events, reports on the performance and reliability of the beacon systems—including malfunctions—and the specific mounting locations used (within the terms and conditions set forth in the waiver). This will allow FMCSA to oversee the safety performance of the alternative technology continuously and to gather critical data, while monitoring activities under the waiver. Finally, Aurora, and any other motor carriers operating under the waiver, are required to meet with FMCSA upon request to provide information about the beacons' performance.

For these reasons, FMCSA finds the waiver is likely to achieve a level of safety that is equivalent to, or greater than, the level of safety that would be obtained in the absence of the waiver. In addition, FMCSA finds that it is in the public interest to grant the waiver to promote innovation and to enable commercial deployment of ADS CMVs to enhance safety and mobility for the American public. Finally, FMCSA finds that deployment of cab-mounted warning beacons in Level 4 ADS-equipped CMVs is a unique and nonemergency event because the operation of a CMV without a driver who can place warning devices on the roadway has never occurred previously.

Sincerely,

Derek D. Barrs
Administrator

Attachment

CC: Jordan Coleman, Kodiak Robotics, Inc. (jordan@kodiak.ai)
Joonsik Maing, Waabi Logistics Inc. (jmaing@waabi.ai)

**Waiver of Warning Device Requirements**

**TERMS AND CONDITIONS OF THE WAIVER**

## I. PERIOD OF THE WAIVER

This waiver from the warning device placement requirements in 49 CFR § 392.22(b), the steady-burning lamp requirement in 49 CFR § 393.25(e), and the requirements for the types and number of warning devices in 49 CFR § 393.95(f), is approved for the three-month period from 12:00 a.m. on July 10, 2026, through 11:59 p.m. on October 9, 2026. Thereafter, absent violation of the terms and conditions of this waiver, or a notification under section IV.D. below, or a determination by the Federal Motor Carrier Safety Administration (FMCSA) of a safety deficiency under 49 U.S.C. 31315(a), this waiver will be reissued.

## II. EXTENT OF THE WAIVER

### A. Applicability to Aurora Operations, Inc

This waiver applies to Aurora Operations, Inc. (Aurora) for its operation of commercial motor vehicles (CMVs) equipped with a Level 4[1] Automated Driving System (ADS). This waiver also extends to any other motor carrier operating CMVs with a Level 4 ADS, provided such motor carrier provides written notification to FMCSA that includes the certifications specified in Section II(B).

### B. Applicability to Other Motor Carriers

Any other motor carrier intending to operate CMVs under the terms and conditions of this waiver must notify FMCSA in writing prior to commencing operations covered by this waiver and must not commence operations until FMCSA acknowledges receipt of the notification, or the expiration of one business day after delivery, whichever occurs sooner. A motor carrier that previously sent FMCSA a written notification certifying the information below need not send an additional notification. The notification must be sent to FMCSA via email to MCPSV@dot.gov certifying the following:

1. The motor carrier's legal name, USDOT number, and principal place of business, and point of contact of the motor carrier.
2. A statement that adequately demonstrates the motor carrier currently has cab-mounted warning beacons and the ability to comply with all terms and conditions of this waiver.
3. A statement affirming the motor carrier will comply with all terms and conditions of this waiver.
4. In accordance with 28 U.S.C. 1746, the statements required under this Section must include language in substantially the following form, "I, [Name], certify under penalty of perjury that the foregoing is true and correct. Executed on [Date], [Signature]."

[1] As used in this waiver, the term "Level 4" has the same meaning as Level 4 High Driving Automation set forth in SAE J3016.

**C. Use of Cab-Mounted Warning Beacons**

Aurora and any other motor carrier operating under the terms and conditions of this waiver (hereinafter "each motor carrier operating under this waiver") pursuant to either Section II(A) or (B) may use cab-mounted warning beacons subject to the conditions in Sections III and IV, below, in lieu of warning device placement requirements in 49 CFR § 392.22(b), the steady-burning lamp requirement in 49 CFR § 393.25(e), and the requirements for the types and number of warning devices in 49 CFR § 393.95(f).

## III. CONDITIONS

This waiver is contingent upon each of the following conditions.

**A. Operations**

1. Each motor carrier operating under this waiver, may operate its eligible Level 4 ADS-equipped CMVs under this waiver.
2. Operations under this waiver shall primarily occur on the U.S. Interstate Highway System. Operations on other public roads are permitted when operationally necessary to complete movements or access operational facilities, provided such roads are part of the validated Operational Design Domain for the specific ADS-equipped CMV.
3. Operations under this waiver are prohibited if operations would otherwise require a "N", "H", "X", "P", "S", or "T" endorsement under 49 CFR 383.93—if a human driver were present.
4. Each motor carrier operating under this waiver is prohibited from operating as a for-hire passenger carrier or private passenger carrier, or transporting hazardous materials as defined in 49 CFR § 383.5, while utilizing this waiver.

**B. Cab-Mounted Warning Beacon Specifications**

1. The cab-mounted warning beacons, a safety device, used under this waiver must consist of forward- and rearward-facing flashing lights.
2. Mounting. At least one rearward-facing light must be mounted on each side of the cab, and at least one forward-facing light mounted on the front of the cab. The mountings must provide stable support for the beacons. The total width of the vehicle, inclusive of mountings and lights, may not exceed 122 inches.
3. Location. All lights must be mounted at least 100 inches from the ground and located at or above the upper edge of the sideview mirrors but below the top edge of the cab.
4. Performance. The cab-mounted warning beacons must be amber in color and meet the Class 1 photometric performance requirements of SAE J595.
5. Flash Pattern. The activation of the warning system must cause the beacons to flash at a rate different from the vehicle's standard hazard warning signal flashers required under 49 CFR § 392.22(a).

6. Power. The beacons must be designed and installed with redundant power sources to prevent failure due to a single-point power failure.

**C. Activation and Operation:**

1. The beacons must activate as soon as possible, but in any event within 10 minutes, whenever the CMV is stopped on the traveled portion or the shoulder of a highway for any cause other than necessary traffic stops (i.e., whenever 49 CFR § 392.22(b) would otherwise apply).
2. The beacons must remain flashing for the entire duration of the stop, from the initial stop until the vehicle reinitiates movement or the vehicle is recovered.
3. Standard hazard warning signal flashers must also activate as required by 49 CFR § 392.22(a) and must continue flashing for the entire duration of the stop.

**D. Other**

1. Each motor carrier operating under this waiver, must comply with all other applicable Federal Motor Carrier Safety Regulations (49 CFR parts 350-399).
2. Each motor carrier operating under this waiver, shall, at FMCSA's request, meet with FMCSA to answer questions regarding data and information required to be provided under this waiver.
3. Each motor carrier operating under this waiver, may also apply for an exemption under 49 U.S.C. 31315(b)(3).

## IV. REPORTING REQUIREMENTS

**A. Crash Reporting**

Each motor carrier operating under this waiver, must notify FMCSA via email to MCPSV@dot.gov not later than 5 calendar days of any crash involving a CMV while the cab-mounted warning beacons are activated or should have been activated per the conditions of this waiver. For the purposes of this waiver, the term "crash" shall have the same meaning as defined in the National Highway Traffic Safety Administration's (NHTSA) Third Amended Standing General Order (SGO) 2021-01.[2]

Notification must include all available information regarding the circumstances of the crash, including the following information:

1. Identifier of the Waiver ("Waiver of Warning Device Requirements").
2. Date and time of the crash.
3. City or town, and State, in which the crash occurred, or closest to the crash scene, and geolocation information.

[2] Under NHTSA's Third Amended SGO 2021-01, "'Crash' means any physical impact between a vehicle and another road user (vehicle, pedestrian, cyclist, etc.) or property that results or allegedly results in any property damage, injury, or fatality. A subject vehicle is involved in a crash if it physically impacts another road user or if it contributes or is alleged to contribute (by steering, braking, acceleration, or other operational performance) to another vehicle's physical impact with another road user or property involved in that crash." The SGO is available at: https://www.nhtsa.gov/sites/nhtsa.gov/files/2025-04/third-amended-SGO-2021-01_2025.pdf.

4. Vehicle Identification Number (VIN).
5. Description of any property damage.
6. Number of individuals suffering physical injury.
7. Number of fatalities.
8. The police-reported narrative of the crash (if available at the time of the report or provided upon its completion).

**B. Waiver Term Report**

Each motor carrier operating under this waiver, must submit a report to FMCSA via email to MCPSV@dot.gov not later than 30 calendar days of the end of this waiver's term (or not later than 30 calendar days of ceasing operations under this waiver, if sooner). This report must include the following information covering the entire period of operation under this waiver:

1. Total number of its CMVs that operated under the waiver.
2. Total vehicle miles traveled by its CMVs under the waiver.
3. Aggregate data on the frequency, duration, location (including road type: Interstate, state highway, local road, etc.), and reason for cab-mounted warning beacon activation events for its CMVs.
4. A summary of the overall performance and reliability of the cab-mounted warning beacons and their activation systems on its CMVs, including any malfunctions or power issues experienced.
5. The specific mounting locations of all cab-mounted warning beacons used on its CMVs.
6. Whether any variations in cab-mounted warning beacon types, mounting, or flash patterns were used across its fleet when operating under the waiver. If variations were used, any performance differences among the beacons.

**C. Request to Treat Information as Confidential Business Information (CBI)**

Nonpublic information submitted by a motor carrier under Section IV(A) or (B) above will be treated as CBI, which is defined as commercial or financial information that is both customarily and actually treated as private by its owner,[3] if designated as such by the submitting motor carrier. FMCSA will withhold CBI from public disclosure to the greatest extent possible consistent with the Freedom of Information Act (5 U.S.C. 552), and DOT's implementing regulations at 49 CFR Part 7.

**D. Safety Notification to FMCSA**

Each motor carrier operating under this waiver, must notify FMCSA via email to MCPSV@dot.gov not later than 5 calendar days after it becomes aware, or otherwise determines, that the continued use of cab-mounted beacons covered by this waiver is no longer likely to maintain a level of safety that is at least equivalent to the level that would be achieved absent this waiver.

---

[3] *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019).

## V. PREEMPTION

In accordance with 49 U.S.C. 31315(d), as implemented by 49 CFR § 381.600, during the period this waiver is in effect, no State shall enforce any law or regulation applicable to interstate commerce that conflicts with or is inconsistent with this waiver with respect to a firm or person operating under the waiver. States may, but are not required to, adopt the same waiver with respect to operations in intrastate commerce.

## VI. TERMINATION

FMCSA will terminate this waiver with respect to any specific motor carrier if: (1) that motor carrier fails to comply with the terms and conditions of this waiver; (2) that motor carrier's operation under the waiver results in a lower level of safety than was maintained before it was granted; or (3) continuation of the waiver for that motor carrier would not be consistent with the goals and objectives of 49 U.S.C. 31136(e) and 31315(a).