**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

**KOSTAS GIANNOULIAS,**

Petitioner,

v.

**FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,**

Respondent.

**No. 26-2838**

# PETITIONER'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR ADMINISTRATIVE STAY, STAY PENDING REVIEW, AND EXPEDITED PROCEEDINGS

FMCSA's response confirms the facts. The July order "extend[s] to other motor carriers"; Stack AV joined after the Administrator signed it; prior participants need not reapply; and the reports let FMCSA "gather critical data." Resp. 7 & n.4, 25; Mot. Ex. 1, Dkt. 2 at 36. Those admissions describe prospective class enrollment, automatic continuation, and a data-gathering program--not a one-person waiver for an event completable within three months. FMCSA never answers 49 C.F.R. § 381.205(a), which requires that, and never explains how the commercial operation can be a "unique event" every quarter. Its threshold arguments understate Petitioner's corridor use and treat his September 3 submission as operative for finality but irrelevant to party status.

## I. Petitioner's agency presentation supplies party status; FMCSA cannot defeat review by silence.

FMCSA offered no pre-decision notice, docket, application, hearing, or intervention procedure. Nuclear Regulatory Commission v. Texas turned on a

different scheme: the Atomic Energy Act expressly distinguished a "person" from one admitted "as a party." 605 U.S. 665, 676-78 (2025). Where intervention is not required, a "full presentation of views" may establish party status. ACA International v. FCC, 885 F.3d 687, 711 (D.C. Cir. 2018). Petitioner's September 3 submission presented his injury and objections; sought a stay, reconsideration, rescission, or termination; and requested participation in any successor process. Resp. 10-11.

FMCSA cannot have it both ways. It calls the submission a "reconsideration motion" that suspends finality under Saban v. Department of Labor, 509 F.3d 376, 379 (7th Cir. 2007), yet denies it effect on party status. Resp. 20-21. Because FMCSA treats the filing as reconsideration, a rehearing petition may supply party status when intervention was unnecessary. Simmons v. ICC, 716 F.2d 40, 43 n.2 (D.C. Cir. 1983) (citing Pacific Gas & Electric Co. v. FPC, 506 F.2d 33, 46 (D.C. Cir. 1974)). If FMCSA's characterization is valid, Petitioner participated; if the filing has no effect, the July order remains final.

Saban does not justify letting FMCSA extinguish review by refusing to act until the order expires. The order says it "will be reissued," and the response identifies no agency deadline for deciding Petitioner's request. The July order remains operative and confers regulatory immunity while FMCSA withholds a decision on reconsideration. An agency cannot manufacture judicial nonfinality through its silence while leaving the challenged order effective on public highways.

The Court should reject that administrative lockout, exercise jurisdiction, and proceed on an expedited schedule.

**II. Petitioner faces concrete injury and imminent loss of review.**

Petitioner is an interstate freight driver, not "anyone who occasionally drives in Texas." Resp. 17. His declaration documents six July-August trips involving Dallas, Houston, Austin, Laredo, and El Paso, including Dallas-Houston; night driving; and his intent to accept a Texas-corridor load before October 9. Decl. ¶¶ 1-10. FMCSA's 45-truck denominator counts publicized driverless deployments, not the waiver's coverage. The order covers Level 4 ADS-equipped CMVs whether or not a human driver is present. Aurora reports 109 Class 8 CMVs, "the majority" equipped with the Aurora Driver and warning beacons. Aurora Application at 9-10; 91 Fed. Reg. at 20,253. FMCSA's SMS lists 70 roadside inspections and July-waiver Aurora truck-tractor inspections in Texas, New Mexico, Arizona, and California. FMCSA, Safety Measurement System, U.S. DOT No. 3441156, Inspection History (record ending Aug. 28, 2026). Those records establish a public-road footprint beyond announced routes. Carrier notifications and term reports--not publicity--identify the covered fleet and routes; FMCSA withheld them.

Alliance is not analogous. Its doctors neither prescribed nor used mifepristone and depended on independent choices by prescribers and patients before they might treat a complication. FDA v. Alliance for Hippocratic Medicine, 602 U.S. 367, 382-

84 (2024). Here, Petitioner repeatedly works on the deployment corridors, and FMCSA authorized substitution of the roadside safety devices designed to protect him. Public Citizen confirms that crash death, bodily injury, and property damage are concrete even when widely shared and left increased-risk standing open. 489 F.3d at 1292-97. This route-specific occupational exposure is not a distant ripple effect.

The response ignores procedural injury. Petitioner alleges FMCSA used a waiver label to deny highway users the exemption and pilot-program protections Congress provided: notice, access to the safety basis, and comment. Mot. 21-22. A person accorded a procedural right to protect a concrete interest need not satisfy ordinary immediacy and redressability requirement. Lujan v. Defenders of Wildlife, 504 U.S. 555, 572 n.7 (1992). Petitioner's work on the affected corridors supplies the concrete interest.

Nor did Petitioner sleep on his rights. He challenged the July 9 order on the sixtieth day, after seeking agency relief as Rule 18 requires. Earlier waivers cannot immunize Waiver No. 4, an operative order with a newly opened roster. The order's promised reissuance also defeats FMCSA's suggestion that only eighteen days matter. Without relief, the agency can expire one letter, issue the next, and repeat the jurisdictional argument indefinitely.

**III. FMCSA's admissions establish likely success.**

First, FMCSA answers a claim Petitioner did not make. The defect is not simply that the statute omits the words "only one waiver." Resp. 21-22. FMCSA's binding regulation requires a nonemergency event that "will take no more than three months to complete." 49 C.F.R. § 381.205(a). Driverless commercial operation began under this sequence in October 2025, continued without interruption, and is promised reissuance after October 9. An ongoing mode of commercial operation is not an event that completes within a quarter. The response never cites or discusses § 381.205(a). An agency must follow its own governing regulations. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 266-68 (1954).

The COVID examples do not supply judicial approval of serial commercial waivers. They responded to a national emergency and emergency conditions; no court held that a commercial objective may be relabeled a new unique event every three months. Agency practice cannot override § 381.205(a).

Nor were the terms merely carried forward unchanged. Waiver No. 1 prohibited a participating carrier from operating "as a for-hire or private passenger carrier." Mot. Ex. 4, Dkt. 2 at 55. Waivers Nos. 2 through 4 changed that condition to prohibit operation "as a for-hire passenger carrier or private passenger carrier." Id. at 63, 71; Mot. Ex. 1, Dkt. 2 at 37. On its face, inserting "passenger" after "for-hire" narrowed the prohibition and opened the waiver to for-hire freight operations that No. 1's terms had barred. No order acknowledges that change, identifies the

request or analysis that produced it, or explains how expanded permissible operations remained the same unique event. Waiver No. 1's cover letter paraphrased the restriction as covering passenger transportation; that conflict with its operative condition makes the decisional record more, not less, necessary. Counsel cannot now supply the explanation the agency omitted. SEC v. Chenery Corp., 332 U.S. 194, 196 (1947).

The response leaves unanswered the authority for the first order on which its continuous practice rests. It cites Waiver No. 1 and identifies Jesse Elison as FMCSA's Chief Counsel, Resp. 6, but never answers Petitioner's record demand. Section 381.215 states that the final waiver decision is made and signed by the Administrator. Section 390.4(e) permits delegation, but requires the delegation to be in writing. Mot. 8. Petitioner did not presume that no delegation existed; he requested the contemporaneous instrument. FMCSA identifies none. Because that instrument, if it exists, is uniquely in FMCSA's possession and bears on the foundation of the four-order sequence FMCSA invokes, the Court should require it with the certified record or record index. Absent that instrument, FMCSA has not established that Waiver No. 1 was issued by an authorized decisionmaker.

Second, the response admits prospective class operation. The order "extend[s] to other motor carriers," and Stack AV obtained coverage after issuance. Resp. 7 & n.4. Opting in does not make relief individual: one template governs every member,

prior members need not reapply, and authority begins after one business day without a carrier-specific Administrator decision. That is not the staff review and signed final decision described in 49 C.F.R. § 381.215; it is open enrollment in a common regulatory immunity.

Third, FMCSA says this cannot be a pilot because participants were unknown and a statistically valid number was unclear, while also defending reports as a means to "gather critical data." Resp. 23, 25. That is not a defense; it identifies the safeguards FMCSA omitted. Sections 381.400 and 381.505 require a defined plan, comparison group, statistically valid participant number, monitoring, and public safeguards before a pilot collects safety data. The agency cannot create an unknown, self-enrolling population and then cite that uncertainty as permission to bypass the pilot statute.

Advocates for Highway & Auto Safety v. FHWA is directly on point. It vacated a waiver program where the agency sought data while making the required prior safety finding: a reasonable data-development approach was still not "in accordance with law" because the statute required the safety determination first. 28 F.3d 1288, 1294 (D.C. Cir. 1994). FMCSA now repeats the same "awkward position": it says post-waiver reporting gathers critical data while insisting the pre-waiver evidence already proves no safety diminution.

**IV. FMCSA does not cure the evidentiary defects.**

The naturalistic study found 44.48% response to beacons and 44.06% to triangles--a 0.42-point difference with a 95% interval extending from beacons 1.13 points worse to 1.97 points better. A failure to reject equality is not an affirmative equivalence test. Aurora Application, App. B at 29-31, Docket No. FMCSA-2026-0958-0001. The VTTI study also separated visibility from comprehension: all 24 nighttime participants understood the triangles, but only 19 understood the beacons; five did not because of unfamiliarity and/or beacon location. Id., App. C at 56. A device's visibility or preference does not establish comprehension of its stopped-vehicle warning. FMCSA's 2024 denial also found triangles elicited more responses in five of eight scenarios; eight of ten respondents selected triangles as the better stopped-truck indicator; the studies did not test the full autonomous stop-and-activation sequence; and weather, geometry, vehicle, trailer, and mounting variation remained unresolved. 89 Fed. Reg. 105,675, 105,678-81 (Dec. 27, 2024). Saying operations are "primarily" on Interstates does not remove curves, crests, darkness, weather, work zones, or authorized off-Interstate travel.

FMCSA invokes the April notice's no-crash statement but omits the exposure figure on the same page: 34 CMVs traveled more than 500,000 miles, yet the beacons activated for only "nearly 10 hours." 91 Fed. Reg. at 20,253. Moving miles do not test a warning device used only while stopped. Aurora labels them expected stops for road closures, inclement weather, and development activities, but gives no

event count or scenario-level breakdown of duration, location, geometry, traffic, weather, or vehicle/trailer configuration. Aurora Application at 15. Zero reported crashes during that opaque aggregate does not establish equivalent safety.

The response's crash assertion is both narrower and staler than it appears. It says no crash involving a "beacon-activated CMV" has been reported, yet cites an April 15 notice that states only that no qualifying crash had been reported as of that publication date. Resp. 16-17, 26; 91 Fed. Reg. 20,252, 20,253. NHTSA's official ADS Standing General Order dataset now contains Aurora's five-day Report No. 30530-15781 for a July 8, 2026 collision at 5:59 a.m. in Aledo, Parker County, Texas. It marks the ADS as "Verified Engaged," while Aurora's narrative states that the truck was in manual mode at impact after disengagement approximately 12 seconds earlier. NHTSA, SGO Incident Reports--ADS, Report No. 30530-15781 (Sept. 15, 2026). A certified Texas peace-officer report independently identifies the signalized frontage-road intersection, records disabling damage to the Aurora tractor, states that it came to rest after impact and was towed, and records the roadway and scene as uncleared until 7:36 a.m. Certified TxDOT Crash Report, Crash ID 21541501.1, at 1-3 (Pet'r Supp. Ex. A).

That event is a "crash" under the NHTSA definition incorporated into the waiver, and the post-impact duty was mandatory. Section III.C.1 required the beacons to activate "as soon as possible, but in any event within 10 minutes"

whenever the CMV stopped on the traveled portion or shoulder for any cause other than a necessary traffic stop. Section III.C.2 required them to remain flashing throughout the stop until the vehicle resumed movement or was recovered. Waiver No. 4 at 10. The collision stopped and disabled the tractor in the intersection at 5:59 a.m.; it did not resume movement and was towed. That was not a necessary traffic stop. The beacons therefore had to activate as soon as possible, no later than 6:09 a.m., and remain flashing until recovery.

Two publicly posted scene photographs make the omitted activation record urgent. One post, displayed as 6:06 a.m., shows the disabled tractor in the intersection but records no visible illumination or bloom from the cab-mounted amber beacons. A second post, displayed as 6:40 a.m.--31 minutes after the outside activation deadline and while the truck remained at the scene--likewise records no visible amber-beacon illumination, even though nearby emergency lights produce pronounced red and blue bloom. Pet'r Supp. Exs. B-C. Still photographs record instants rather than a full flash cycle, but these separate images are concrete evidence about performance that cannot be displaced by an April snapshot. FMCSA's qualifier also proves nothing: if the beacons activated, this was a crash involving a beacon-activated CMV; if they did not, the event escaped FMCSA's chosen category only because the substitute warning system did not perform when the waiver made performance mandatory.

Section IV.A required a report within five days of a crash involving a covered CMV while the beacons were activated or should have been activated. Section IV.B separately required the carrier to report the frequency, duration, location, and reason for activation events and any reliability problem or malfunction. Yet the Court has neither Aurora's FMCSA crash submission, the system logs showing the activation start and duration, nor its complete Waiver No. 3 term report, due August 8. Those required records will establish compliance or nonperformance; FMCSA cannot suppress both possibilities behind the phrase "beacon-activated CMV." And later material cannot retroactively supply the basis for the July 9 order. Chenery, 332 U.S. at 196. The Court should require the full term report, crash submission, activation telemetry, and all associated video and communications as part of the certified record.

Finally, the response cites a 1997 unpublished Seventh Circuit order for scientific deference. Resp. 24. Circuit Rule 32.1(d) prohibits citation of a pre-2007 unpublished order except for preclusion or law of the case. In all events, technical deference does not permit FMCSA to disregard its regulation, omit required procedures, or replace a prior safety finding with data it admits it is still gathering.

**CONCLUSION**

The Court should grant Petitioner's motion in full: enter an immediate administrative stay and a stay pending review of Waiver No. 4; prohibit additional carrier opt-ins

and any successor waiver; direct FMCSA promptly to identify every carrier operating under the waiver and lodge the certified administrative record and record index, including the written delegation for Waiver No. 1, the requests and staff recommendations for each waiver, the complete term reports, and all crash and activation materials; and order expedited merits briefing and disposition. The existing warning-device requirements should remain in force throughout that expedited review.

Respectfully submitted,

____________________

Kostas Giannoulias, Petitioner pro se
3851 Mission Hills Rd, Unit 210, Northbrook, Illinois 60062
kostas@haasefreightsystems.com | 708-772-6738
September 22, 2026

## CERTIFICATE OF COMPLIANCE

This reply complies with Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,571 words, excluding the items excluded by Rule 32(f). It also complies with Rules 27(d)(1)(E) and 32(a)(5)-(6) because it was prepared using a proportionally spaced 14-point Times New Roman typeface.

______________________

Kostas Giannoulias, Petitioner pro se

## SUPPLEMENTAL EXHIBIT A

Certified TxDOT Crash Report Crash ID 21541501.1

Texas Department of Transportation

125 EAST 11TH STREET, AUSTIN, TEXAS 78701-2483 | WWW.TXDOT.GOV

Thu, 17 September 2026

STATE OF TEXAS §

This is to certify that I, Jim Markham, am employed by the Texas Department of Transportation (Department); that I am the Custodian of Motor Vehicle Crash Records for such Department; that the attached is a true and correct copy of the peace officer's report filed with the Department referred to in the attached request with the crash date of Wed, 08 July 2026, which occurred in Parker County; that the investigations of motor vehicle crashes by peace officers are authorized by law; that this Texas Peace Officer's Crash Report is required by law to be completed and filed with this Department; that this report sets forth matters observed pursuant to duty imposed by law as to which matters there was a duty to report, or factual findings resulting from an investigation made pursuant to authority granted by law.

Jim Markham
Director, Crash Data & Analysis Section
Traffic Safety Division
125 East 11th Street
Austin, TX 78701-2483

TEXAS DEPARTMENT OF TRANSPORTATION

OUR VALUES: *People • Accountability • Trust • Honesty*
OUR MISSION: *Connecting You With Texas*

An Equal Opportunity Employer

Law Enforcement and
TxDOT use Only

**Texas Peace Officer's Crash Report**
**(Form CR-4 01/01/2026)**
Questions? Call 844/274-7457

| | |
|---|---|
| TxDOT Crash ID: | 21541501.1 |
| Case ID: | TX 26-1557756 |
| Page: | 1 of 3 |

## ////////////// Crash and Location Information \\\\\\\\\\\\\\

| Crash Date | Crash Time | Report Date | Total Units | Total Persons | Fatal | CMV | School Bus | Railroad | MAB | Supplement | Active School Zone |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 07/08/2026 | 05:59 | ########## | 3 | 2 | NO | YES | NO | NO | NO | NO | NO |

| County Name | City Name | Outside City Limits | Latitude | Longitude | $1000 Damage to Property |
|---|---|---|---|---|---|
| PARKER | | YES | 32.72762282 | -97.59964404 | YES |

## Road on Which Crash Occurred

| Roadway System | Highway | Roadway Part | Block | Street Prefix | Street Name | Street Suffix |
|---|---|---|---|---|---|---|
| FARM TO MARKET | 1187 | MAIN/PROPER LANE | | | IH 20 | |

| Street Description | Speed Limit | Direction of Traffic | Toll Road / Toll Lane | Const. Zone | Workers Present | Private Drive or Road, Private Property or Parking Lot | Secondary Crash | At Intersection |
|---|---|---|---|---|---|---|---|---|
| | 45 | SOUTH | NO | YES | NO | NO | NO | YES |

## Intersecting Road

| Roadway System | Highway | Roadway Part | Block | Street Prefix | Street Name | Street Suffix |
|---|---|---|---|---|---|---|
| INTERSTATE | 20 | SERVICE/ FRONTAGE ROAD | | | | |

| Speed Limit | Street Description | Railroad Crossing # |
|---|---|---|
| 50 | | |

## Environmental and Roadway Conditions

| Weather Condition | Light Condition | Entering Roads | Roadway Type |
|---|---|---|---|
| CLEAR | DAWN | THREE ENTERING ROADS - T | ONE WAY |

| Roadway Alignment | Surface Condition | Traffic Control |
|---|---|---|
| STRAIGHT, GRADE | DRY | SIGNAL LIGHT |

## ////////////// Investigator Information \\\\\\\\\\\\\\

| Investigator Name | ID | Local Use |
|---|---|---|
| #########, ####### | ##### | |

| Agency | ORI | Service/Region/DA | Investigation Complete |
|---|---|---|---|
| DEPARTMENT OF PUBLIC SAFETY, STATE OF TEXAS | | HP/IC/02 | YES |

| How Notified | Date Notified | Time Notified | Date Arrived | Time Arrived | Date Roadway Cleared | Time Roadway Cleared | Date Scene Cleared | Time Scene Cleared |
|---|---|---|---|---|---|---|---|---|
| DPS Mineral Wells | ########## | 06:07 | ########## | 06:11 | 07/08/2026 | 07:36 | 07/08/2026 | 07:36 |

## ////////////// Crash Diagram - Not to Scale \\\\\\\\\\\\\\




REDACTED
Copy from Custodial File

| Law Enforcement and TxDOT use Only | **Texas Peace Officer's Crash Report (Form CR-4 01/01/2026)** Questions? Call 844/274-7457 | | |
|---|---|---|---|
| | | TxDOT Crash ID: | 21541501.1 |
| | | Case ID: | TX 26-1557756 |
| | | Page: | 2 of 3 |

### ////////////// Investigator Narrative \\\\\\\\\\\\\\\\

Unit 2 towing Unit 3 were traveling east on IH-20 S Service Rd approaching the intersection of FM 1187. Unit 2 had a solid green signal light. as it approached the intersection. Unit 1 was traveling south on FM 1187 and had a solid red signal light as it approached the intersection. Unit 1 continued through the solid red signal light and collided with Unit 2 towing Unit 3. Unit 1 came to rest facing southwest, and Unit 2 towing Unit 3 came to rest facing east. No injuries were noted at the time of the crash.

### ////////////// Unit Information \\\\\\\\\\\\\\\\

## Unit #1

| Unit Description | Parked Vehicle | Hit and Run | Autonomous Unit | Autonomous Level Engaged | Responder Struck | Police, Fire, EMS on Emergency | Vehicle Inventoried |
|---|---|---|---|---|---|---|---|
| MOTOR VEHICLE | NO | NO | NO | NO AUTOMATION | NO | NO | NO |

| In Tow | By Unit # | License Plate State | License Plate Num. | VIN | Vehicle Year | Vehicle Color |
|---|---|---|---|---|---|---|
| NO | | TEXAS | ####### | 1FTEW1EG7GKE82075 | 2016 | WHITE |

| Vehicle Make | Vehicle Model | Vehicle Body Style |
|---|---|---|
| FORD | F150 | PICKUP |

| Proof of Financial Responsibility | Financial Responsibility Type | Financial Responsibility Name |
|---|---|---|
| YES | PROOF OF LIABILITY INSURANCE | ########### ####### ####### #### ### |

| Financial Responsibility Number | Financial Responsibility Phone Number |
|---|---|
| ######### | ##### ######## |

| Owner/Lessee | Owner/Lessee Name | Owner/Lessee Address |
|---|---|---|
| OWNER | ##########, #####, ### | ### ####### ##### ## #####, ## 76008 |

| Vehicle Damage Direction of Force | Vehicle Damage Description | Vehicle Damage Severity |
|---|---|---|
| 3 O'CLOCK | RIGHT SIDE DAMAGE ANGULAR IMPACT | DAMAGED 3 |

| Towed By | Towed To |
|---|---|
| ########## | #### ##### ### ############ ###### ##### |

### *Unit Contributing Factors and Defects*

| Contributing Factor (Investigator's Opinion) | Factor Description |
|---|---|
| 1 | DISREGARD STOP AND GO SIGNAL |

### *Primary Person in Unit #1*

| Person # | Person Type | Seat Position |
|---|---|---|
| 1 | DRIVER | FRONT LEFT OR MOTORCYCLE DRIVER |

| Name: Last, First, Middle | Date of Birth |
|---|---|
| ##########, ######, ##### | ##/##/2006 |

| Address (Street, City, State, Zip) |
|---|
| ### ####### ##### ## #####, ## 76008 |

| DL/ID Type | DL/ID State | DL/ID Number | DL Class |
|---|---|---|---|
| DRIVER LICENSE | TEXAS | ######## | CLASS C |

| CDL Endorsements | DL Restrictions |
|---|---|
| NONE | NONE |

| Injury Severity | Age | Ethnicity | Sex | Ejected |
|---|---|---|---|---|
| NOT INJURED | 19 | WHITE | MALE | NO |

| Restraint | Airbag | Helmet | Solicitation |
|---|---|---|---|
| SHOULDER & LAP BELT | DEPLOYED, MULTIPLE | NOT APPLICABLE | NO |

| Alcohol Specimen | Alcohol Result | Drug Specimen | Drug Result | Drug Category |
|---|---|---|---|---|
| NONE | | NONE | NOT APPLICABLE | NOT APPLICABLE |

### *Charges*

| Charge | Citation/Reference Number |
|---|---|
| DISREGARD RED LIGHT | TX C 26 5722095 |
| OPERATE VEHICLE W/EXPIRED LICENSE PLATE | TX C 26 5722095 |

## Unit #2

| Unit Description | Parked Vehicle | Hit and Run | Autonomous Unit | Autonomous Level Engaged | Responder Struck | Police, Fire, EMS on Emergency | Vehicle Inventoried |
|---|---|---|---|---|---|---|---|
| MOTOR VEHICLE | NO | NO | YES | NO AUTOMATION | NO | NO | NO |

| In Tow | By Unit # | License Plate State | License Plate Num. | VIN | Vehicle Year | Vehicle Color |
|---|---|---|---|---|---|---|
| NO | | TEXAS | ####### | 3HSDZAPR3TN367141 | 2026 | BLUE |

| Vehicle Make | Vehicle Model | Vehicle Body Style |
|---|---|---|
| UNKNOWN | UNKNOWN | TRUCK TRACTOR |

| Proof of Financial Responsibility | Financial Responsibility Type | Financial Responsibility Name |
|---|---|---|
| YES | PROOF OF LIABILITY INSURANCE | ####### ####### ############## #### ### |

| Financial Responsibility Number | Financial Responsibility Phone Number |
|---|---|
| ################# | ##### ######## |

| Owner/Lessee | Owner/Lessee Name | Owner/Lessee Address |
|---|---|---|
| OWNER | ###### ########## | ### ######## #### #######, ## 75019 |

| Vehicle Damage Direction of Force | Vehicle Damage Description | Vehicle Damage Severity |
|---|---|---|
| 12 O'CLOCK | FRONT END DAMAGE DISTRIBUTED IMPACT | DAMAGED 3 |

| Towed By | Towed To |
|---|---|
| ########## | #### # # ### ###### ## ##### |

REDACTED
Copy from CustodialFile

## CMV Information

| Carrier's Corporate Name | Carrier's Corporate Address |
|---|---|
| ###### ########## #### | ### ######## #### #######, ## 75019 |

| 10,001+ LBS. | Transporting HazMat | 9+ Capacity | CMV Disabling Damage | Vehicle Operation | Carrier ID Type | Carrier ID |
|---|---|---|---|---|---|---|
| YES | NO | NO | YES | INTERSTATE COMMERCE | US DOT | ######## |

| Vehicle Type | Bus Type |
|---|---|
| TRACTOR/SEMITRAILER | NOT A BUS |

| RGVW / GVWR | Weight | HazMat Released | HazMat Class | HazMat ID | HazMat Class | HazMat ID | Cargo Body Type | Intermodal Shipping Container | Actual Gross Weight | Total Axles |
|---|---|---|---|---|---|---|---|---|---|---|
| RGVW | 80000 | | | | | | VEHICLE TOWING ANOTHER VEHICLE | NO | | |

| Unit | RGVW / GVWR | Weight | Trailer Type | CMV Disabling |
|---|---|---|---|---|
| 3 | RGVW | 0 | SEMI-TRAILER | NO |

| Sequence of Events | Event Description |
|---|---|
| 1 | COLLISION INVOLVING MOTOR VEHICLE IN TRANSPORT |

## Primary Person in Unit #2

| Person # | Person Type | Seat Position |
|---|---|---|
| 1 | DRIVER | FRONT LEFT OR MOTORCYCLE DRIVER |

| Name: Last, First, Middle | Date of Birth |
|---|---|
| #######, #####, ##### | ##/##/1959 |

| Address (Street, City, State, Zip) |
|---|
| #### ########### ## #####, ## 75054 |

| DL/ID Type | DL/ID State | DL/ID Number | DL Class |
|---|---|---|---|
| COMMERCIAL DRIVER LIC. | TEXAS | ######## | CLASS A AND M |

| CDL Endorsements | DL Restrictions |
|---|---|
| TANK VEHICLE | HME EXPIRATION DATE MM/DD/YY |
| PASSENGER | OUTSIDE REARVIEW MIRROR OR HEARING AID |
| DOUBLE/TRIPLE TRAILER | |
| HAZARDOUS MATERIALS | |

| Injury Severity | Age | Ethnicity | Sex | Ejected |
|---|---|---|---|---|
| NOT INJURED | 67 | WHITE | MALE | NO |

| Restraint | Airbag | Helmet | Solicitation |
|---|---|---|---|
| SHOULDER & LAP BELT | NOT DEPLOYED | NOT APPLICABLE | NO |

| Alcohol Specimen | Alcohol Result | Drug Specimen | Drug Result | Drug Category |
|---|---|---|---|---|
| NONE | | NONE | NOT APPLICABLE | NOT APPLICABLE |

## Unit #3

| Unit Description | Parked Vehicle | Hit and Run | Autonomous Unit | Autonomous Level Engaged | Responder Struck | Police, Fire, EMS on Emergency | Vehicle Inventoried |
|---|---|---|---|---|---|---|---|
| TOWED/ PUSHED/ TRAILER | NO | NO | NO | NO AUTOMATION | NO | NO | NO |

| In Tow | By Unit # | License Plate State | License Plate Num. | VIN | Vehicle Year | Vehicle Color |
|---|---|---|---|---|---|---|
| YES | 2 | TENNESSEE | ####### | 3H3V532C6LR240127 | 2020 | WHITE |

| Vehicle Make | Vehicle Model | Vehicle Body Style |
|---|---|---|
| HYUNDAI TRANSLEAD TRAILERS | UNKNOWN | TRAILER, SEMI-TRAILER, OR POLE TRAILER |

| Proof of Financial Responsibility | Financial Responsibility Type | Financial Responsibility Name |
|---|---|---|
| YES | PROOF OF LIABILITY INSURANCE | ####### ####### ############## #### ### |

| Financial Responsibility Number | Financial Responsibility Phone Number |
|---|---|
| ################## | ##### ######## |

| Owner/Lessee | Owner/Lessee Name | Owner/Lessee Address |
|---|---|---|
| OWNER | ####### ####### ####### | #### #### ### #########, ## 76099 |

| Towed By | Towed To |
|---|---|
| ########## | #### # # ### ###### ## ##### |


REDACTED

Copy from Custodial File

## SUPPLEMENTAL EXHIBIT B

Screenshot of public social media post displayed as July 8 at 6:06 a.m.



## SUPPLEMENTAL EXHIBIT C

Screenshot of public social media post displayed as July 8 at 6:40 a.m.



## CERTIFICATE OF SERVICE

I certify that on September 22, 2026, I served the foregoing Reply in Support of Emergency Motion for Immediate Administrative Stay, Stay Pending Review, and Expedited Proceedings on counsel for Respondent by first-class United States mail, postage prepaid, addressed as follows:

Steven A. Myers, Counsel of Record
Benjamin T. Takemoto
Attorneys, Appellate Staff, Civil Division, Room 7258
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

I also sent a courtesy copy by electronic mail on the same date to steven.a.myers@usdoj.gov and benjamin.takemoto@usdoj.gov.

______________________________
Kostas Giannoulias, Petitioner pro se