**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

---

**KOSTAS GIANNOULIAS,**
Petitioner,
v. **No. 26-2838**
**FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,**
Respondent.

---

**PETITIONER'S EMERGENCY MOTION FOR RECONSIDERATION AND RENEWED RULE 18 RELIEF BASED ON MATERIAL NEW EVIDENCE**

**Emergency consideration requested before October 9 2026**

Petitioner Kostas Giannoulias, individually and pro se, moves under Federal Rules of Appellate Procedure 18 and 27 for reconsideration of the October 5, 2026 denial of a stay and expedition, and renews his request on material newly available evidence. That evidence includes an actual Aurora encounter during paid Texas freight travel; internal non-interference, recovery, and staffing instructions; a newly uncovered operating-carrier identity and reporting chain; nationwide carrier-location maps; and official Texas records listing 124 Aurora/Kodiak automated vehicles. He requests an immediate administrative stay and a decision before Waiver No. 4 expires at 11:59 p.m. October 9, 2026.

Before receiving notice of today's denial, Petitioner was already preparing to file his supplemental information today. The supplement had not been filed when the denial arrived. He submits this renewed request promptly so the Court can consider the new evidence before the challenged order expires and its stated reissuance

mechanism continues the same roadside-warning relief. Supplemental Declaration ("Supp. Decl.") paragraphs 21-30; Supplemental Exhibit G.

**Relief requested**

1. Grant leave to file and consider the supplemental declaration and Supplemental Exhibits A-K;

2. Reconsider the October 5 denial and immediately administratively stay the challenged July 9, 2026 order, including its opt-in provisions, while deciding this request;

3. Stay that order in its entirety pending judicial review, as to Aurora and every carrier relying on it, nationwide wherever it applies; and

4. Direct an expedited response by October 7, 2026, at 12:00 noon Central Daylight Time, or another time allowing decision before October 9. The response should address the newly identified carriers, applicable crash-reporting entities, current eligible fleet, and internal operational evidence. Expedite this request and the petition.

**I Material newly available evidence warrants reconsideration**

The October 5 order identifies the September 8 emergency motion, FMCSA's September 21 response, and the September 22 reply. Supp. Ex. G. It contains no explanation for the denial. The October 2 encounter and October 4 receipt of internal materials and GENLOGS reports occurred after that briefing. The carrier

identity investigation developed last week through the Texas First Responder Interaction Plan and related records; the Texas fleet records were preserved October 5. These facts and supporting copies were not submitted with the original emergency papers. Supp. Decl. paragraphs 5, 9-13, 21-30.

Operating Procedure 1(c)(7) expressly recognizes motions to reconsider court orders. Rules 18(a)(2)(B) and 27(a)(2)(B) authorize supporting factual submissions for emergency relief. Petitioner incorporates his September statutory and jurisdictional arguments and presents the new evidence for the Court's present stay assessment. Exhibit F includes the complete challenged decision and waiver terms.

## II Actual exposure and carrier footprints refute geographic minimization

FMCSA called an encounter "vanishingly small," reasoning that Petitioner lives in Illinois and "may not even take a trip" on Aurora's routes. Response ("Resp."), Dkt. 6, at 15-16. Petitioner completed his paid Laredo freight delivery, then booked and picked up another paid shipment in San Antonio on October 2 for an October 5 Bolingbrook, Illinois, delivery appointment. On Friday, October 2, at approximately 10:14 a.m. CDT, he personally encountered an Aurora tractor-trailer northbound on I-35 in Texas near mile marker 60. Supp. Decl. paragraphs 3-7. Exhibit H is his clearer encounter photograph. This actual commercial travel corroborates the recurring Texas-corridor exposure and intention to accept suitable freight established in his original declaration.

The newly supplied one-year GENLOGS maps depict confirmed carrier locations across 24 states for Aurora and 31 states for Truck OpCo LLC, subsequently Stack OpCo LLC. Both include Illinois. The attached Truck OpCo/Stack OpCo camera reports record Altamont, Illinois, on December 2, 2025; Cotterel, Idaho, on October 1, 2026; and Bentleyville, Pennsylvania, on October 2, 2026. Supp. Ex. A; Supp. Decl. paragraphs 10-12. This documented footprint defeats reliance on a small set of public launch corridors to minimize Petitioner's recurring occupational exposure.

**III The newly identified operating carrier exposes a reporting-chain gap**

FMCSA identifies "Stack AV" as a participant added after issuance of the July order. Resp. 7-8 & n.4. Last week, the Texas DPS-hosted First Responder Interaction Plan V.3.0 revealed a different legal operating entity: Truck OpCo LLC, USDOT 4087587. Its tractor-identification page expressly names that company and number. Follow-up Pennsylvania records show that Truck OpCo later became Stack OpCo LLC through a June 9, 2026 foreign-registration amendment. The same carrier is identified by USDOT 4087587 and MC 1556450. Stack AV Co. is a separate technology corporation. The operating LLC's Pennsylvania registration dates to May 31, 2023; the corporation's to November 10, 2022. Supp. Ex. I; Supp. Decl. paragraphs 24-25.

Petitioner's investigation found no USDOT or MC registration for the separate Stack AV Co. The preserved federal Company Census query returned no Stack AV legal-name or DBA match; it identified Stack OpCo LLC as the operating carrier, with 36 power units and 21 drivers. Supp. Ex. I at 1-3. FMCSA's use of a corporate brand does not identify which legal motor carrier opted in, what vehicles were covered, or which entity assumed the order's obligations.

Every one of the 26 captured detailed FMCSA inspection records names Truck OpCo LLC, USDOT 4087587. Ten inspections followed the June 9 name amendment, including five during Waiver No. 4: July 21 in Texas, August 3 in Wyoming, August 10 in Louisiana, and August 17 and 26 in Mississippi. The complete captured history spans nine states. Supp. Ex. I at 4-7. The old carrier name persisted in these official inspection records after the name amendment and during the challenged waiver. The Court has not previously been presented with this operating-entity trail.

The Third Amended NHTSA Standing General Order 2021-01 lists "Stack AV" on its service list. Neither Truck OpCo LLC nor Stack OpCo LLC appears anywhere in that list. The order defines a reporting entity by the service list, makes service the trigger for reporting duties, and assigns responsibility for reporting or ensuring an appropriate entity reports. Supp. Ex. J, official pages 3, 7, 9, and 32; Supp. Decl. paragraph 27. FMCSA invokes crash reporting as a safety safeguard. It

should therefore identify the reporting chain covering the actual operating LLC, its covered vehicles, and reportable incidents, rather than rely on a brand name and the absence of reports attributed to that brand. This concrete identity gap materially affects the weight of FMCSA's monitoring assurances. Resp. 9-10, 17, 25-26.

## IV Official fleet records undermine the 45-truck safety denominator

Texas's public automated-vehicle records, preserved October 5, list 91 vehicles for Aurora Operations Inc. and 33 for Kodiak Robotics Inc.: 124 combined, approximately 2.76 times FMCSA's roughly 45-truck figure. Both companies are shown as authorized. Exhibit K reproduces the official totals, authorization identifiers, source information, and complete 124-vehicle roster. These are Texas-authorized automated vehicles; FMCSA must identify the subset eligible for and actually relying on its order. The challenged waiver covers Level 4 ADS-equipped CMVs and is not limited to empty cabs. Supp. Ex. F, Terms and Conditions sections II and III.A; Supp. Ex. K; Resp. 16.

Petitioner's September 25 briefing also identified Kodiak's own September 25 disclosure of 35 Atlas-owned and operated driverless trucks as of June 30. FMCSA's September 21 response instead cited a March 10 figure of 20 Kodiak driverless trucks. Supp. Ex. K; Resp. 8. The 35 Atlas trucks are a separate disclosed population and are not added to Texas's 124, because overlap and carrier ownership must be reconciled. The records establish why the agency's

approximately 45 figure cannot substitute for a current accounting of the full waiver-eligible population, later opt-ins, vehicles carrying non-intervening observers, and actual reporting coverage.

**V Internal evidence identifies a concrete risk of catastrophic injury**

A person who represented that he currently works at Aurora supplied the internal copies October 4. The supplemental declaration identifies their provenance; public exhibits retain disclosed privacy redactions. Supp. Decl. paragraphs 9, 13, 20. The materials show why an occupant in the cab and theoretical access to remote assistance do not establish timely intervention when autonomous recovery fails.

[redacted]

[redacted]

C. Meeting notes report unanswered Mission Control calls, especially on weekends, and approximately [redacted]. Supp. Ex. D. Delayed action and unanswered escalation can leave an unresolved roadside obstruction exactly when approaching motorists need effective advance warning.

[redacted]

Ex. E; Supp. Decl. paragraph 17. Those reported failures reinforce the need to preserve established roadside-warning protections while legality is reviewed. The source also supplied a Phoenix median-collision recording and an internal leadership discussion addressing a head-on-collision scenario. In the latter, the speaker identified as CEO Chris Urmson explains that the current Aurora Driver will not leave the roadway to avoid an object in its path and calls that an intentional design decision. Supp. Decl. paragraphs 18-19. Petitioner submits that retaining the truck on the roadway despite an available evasive path can put vehicle-preservation and control objectives ahead of the human life endangered by

a head-on impact. This is a potentially fatal design tradeoff, not a routine performance issue. Combined with non-interference instructions, failed recoveries, and unanswered calls, it creates grave danger to Petitioner and the traveling public. Supp. Decl. paragraph 30.

Petitioner has preserved the received recordings and can furnish them through a Court-directed process protecting employee information. The roadside-warning connection is concrete: failures that produce an unresolved stopped truck or obstructed lane require advance warning to approaching drivers. The challenged order removes the ordinary distributed warning-device protection in favor of cab-mounted beacons. FMCSA's generalized assurances should be assessed against this evidence of the operating and recovery processes on which those assurances depend.

**VI The combined record satisfies the stay factors**

Nken v. Holder, 556 U.S. 418, 434-35 (2009), requires a strong showing of likely success, irreparable injury absent a stay, consideration of harm to others, and the public interest. Petitioner incorporates his September 8 motion and September 22 reply on the statutory merits, standing, finality, and party status. The new evidence reinforces the exposure, irreparable-injury, equities, and public-interest showing. The merits remain the agency's use of successive three-month waivers and prospective class enrollment for continuing commercial deployment despite 49

U.S.C. § 31315(a) and the unique-event requirement of 49 C.F.R. § 381.205(a). The July terms state that the waiver will be reissued absent specified disqualifying circumstances; FMCSA acknowledges later enrollment. Supp. Ex. F, Terms and Conditions section I; Resp. 7 & n.4; September 22 Reply at 1-2. These agency-record facts support the previously briefed likelihood of success. The supplemental operational evidence supports the present interim-relief assessment.

For irreparable injury, completed Texas work and the October 2 encounter corroborate Petitioner's established recurring exposure while he continues accepting suitable interstate freight. The 24-state and 31-state location maps, nine-state inspection history, 124-vehicle Texas roster, and post-issuance enrollment undermine the premise that his exposure is geographically remote or negligible. Internal recovery and staffing evidence identifies failures that can create or prolong roadside hazards. Collision injury or death from inadequate advance warning cannot be remedied by a later merits judgment. The original papers explain the causal relationship between the warning-device substitution and that roadside risk. The equities and public interest favor restoring generally applicable roadside-warning protections during review. Suspending this order restores those protections for every relying carrier while preserving adjudication of its legality. The safety interest includes professional drivers such as Petitioner and every member of the public approaching disabled commercial equipment. The

combination of a broader documented fleet, uncertain operator/reporting alignment, and internal evidence of delayed or unavailable intervention warrants immediate administrative protection and a stay of the complete order.

**VII Prompt action is necessary before October 9**

Petitioner sought agency relief September 3; FMCSA has not afforded the requested stay. Original Motion, Dkt. 2; Resp. 10-11, 20-21. He requests emergency routing under Operating Procedure 1(c)(1), immediate administrative protection, reasonable notice to FMCSA under Rule 27(a)(3)(A), and an expedited response by October 7 at noon CDT. That schedule allows more response time for an end-of-day October 5 filing while preserving time for decision before October 9. The waiver's express reissuance mechanism heightens the need for prompt review.

Pending legislation adds urgency. H.R. 8870, the BUILD America 250 Act, Title V, Subtitle E, § 5405(a)-(b) (2026), proposes allowing qualifying cab-mounted beacons as substitutes for existing warning devices and restricting inconsistent FMCSA administrative action. Enactment in that form could alter or moot prospective relief by changing the governing law. Petitioner raises this proposed change as additional context for expedition; the newly available evidence supplies the grounds for reconsideration.

**Conclusion**

Petitioner requests leave to submit the new evidence, reconsideration of the October 5 denial, an immediate administrative stay, a stay pending review of the entire July 9 order including all opt-in reliance nationwide, and expedited action before October 9, 2026.

Respectfully submitted,

______________________________________

Kostas Giannoulias, Petitioner pro se
3851 Mission Hills Rd, Unit 210
Northbrook, Illinois 60062
kostas@haasefreightsystems.com
708-772-6738
Date: October 5, 2026

**Certificate of compliance**

This motion complies with Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,369 words, conservatively including the caption, title, headings, and signature block and excluding the certificates and accompanying supporting documents. It complies with the typeface and type-style requirements of Rules 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it uses 14-point Times New Roman. The motion text is double-spaced and has margins of at least one inch as required by Rule 27(d)(1)(D).

Respectfully submitted,

______________________________

Kostas Giannoulias, Petitioner pro se
Date: October 5, 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

---

**KOSTAS GIANNOULIAS,**
Petitioner,
v. **No. 26-2838**
**FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,**
Respondent.

---

**SUPPLEMENTAL DECLARATION OF KOSTAS GIANNOULIAS**

I, Kostas Giannoulias, declare as follows:

1. I am Kostas Giannoulias, the Petitioner in this case, an adult Illinois resident. I submit this declaration individually. Facts about my travel, my observations, my receipt of materials, and the copies I maintain are within my personal knowledge. When describing an event I did not witness, I identify the supplied material as the basis.

2. I work as an interstate commercial freight driver and personally operate a 2024 Ram ProMaster 2500 cargo van. I obtain freight through the spot market, and my routes depend on available loads and ordinary commercial considerations. The original declaration describes my repeated Texas freight work.

3. After filing my reply in this case, I completed the Laredo delivery discussed in my recent freight plans. This was paid commercial freight work, not a hypothetical plan to travel to Texas.

4. On Friday, October 2, 2026, I booked and picked up another load in San Antonio, Texas, for delivery in Bolingbrook, Illinois. The bill of lading records an October 2 San Antonio pickup appointment and an October 5 Bolingbrook delivery appointment. This paid shipment required another interstate movement from Texas toward my home state during Waiver No. 4's effective period.

5. On Friday, October 2, 2026, at approximately 10:14 a.m. Central Daylight Time, I personally encountered an Aurora tractor and trailer traveling northbound on I-35 in Texas around mile marker 60. I identified it from its appearance and visible markings. I reviewed my encounter photographs and video to verify this date and time.

6. The truck appeared to me to be speeding. I retained my encounter photographs and video. Supplemental Exhibit H reproduces the clearer photograph I supplied. I did not measure its speed with radar. The moving-truck photograph identifies equipment and markings; I could not determine ADS engagement from outside the cab and did not observe a disabled vehicle or activated warning beacons.

7. The Laredo trip, San Antonio pickup, and encounter occurred during my actual commercial work. I continue accepting suitable interstate freight. These events corroborate the recurring Texas-corridor travel described in my original declaration. I have retained the additional encounter photograph and video.

8. The bill of lading and related business records contain private customer, shipper, consignee, shipment, and commercial information. I am not attaching them publicly. I have retained them and can provide appropriately redacted corroboration or use a Court-directed protected procedure if required.

9. On Sunday, October 4, 2026, a person who represented that he currently works at Aurora contacted me and supplied internal communications, procedures, presentation slides, and video copies concerning Aurora operations and employee safety. Another individual supplied GENLOGS maps and camera reports concerning Aurora and Truck OpCo/Stack OpCo.

10. Supplemental Exhibit A contains the GENLOGS copies supplied to me. Aurora's one-year map identifies USDOT 3441156 and MC 1117669 and depicts shaded confirmed-location coverage in 24 states: Arizona, Arkansas, California, Colorado, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Michigan, Missouri, Mississippi, Montana, North Carolina, New Mexico, Ohio, Oklahoma, South Carolina, Tennessee, Texas, Utah, West Virginia, and Wyoming.

11. The Truck OpCo/Stack OpCo one-year map identifies USDOT 4087587 and MC 1556450, displays Stack OpCo LLC, and identifies its previous name as Truck OpCo LLC. It depicts shaded coverage in 31 states: Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, New Mexico, North Carolina, Ohio,

Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. The camera reports show December 2, 2025, in Altamont, Illinois; October 1, 2026, in Cotterel, Idaho; and October 2, 2026, in Bentleyville, Pennsylvania.

12. The maps' counts describe shaded geographic footprints. I did not operate the GENLOGS cameras. The copies establish reported vehicle locations and markings, not ADS mode or actual waiver use on every trip. The displayed Illinois observation date is December 2, 2025, despite the supplied filename. Exhibit A uses the reports displaying the identified carrier numbers.

13. The person who supplied the internal materials represented that they were Aurora employee operational materials. The copies contain Aurora branding or internal operating language and procedures. I received copies, not the company's native original files. Exhibits B-E reproduce selected copies received, with employee names or identifying information redacted where indicated. I have preserved the copies as received separately.

[redacted]

[redacted]

15. Exhibit C contains the slides titled Why This Matters Now and The Ask. They

[redacted]

presentation date. I do not represent that the two-week countdown begins on the date I received them.

16. Exhibit D contains the meeting-note screenshot reporting operator frustration with unanswered Mission Control Center calls, particularly on weekends, and approximately [redacted]. The screenshot also describes supervised-mode disengagement instructions and authorization to switch operating modes. The employee names in the public copy are redacted; the surrounding text is retained.

[redacted]

Unix timestamps 1784148502.790 and 1784148764.704. Converting those seconds from the Unix epoch yields July 15, 2026, at 20:48:22.790 UTC and 20:52:44.704 UTC, respectively. I did not personally witness those logged events.

18. I also received and reviewed a copied recording identified by the source as an Aurora autonomous-truck incident in Phoenix, Arizona. It includes a forward roadway view and an in-cab view and shows the truck moving toward and making contact with a raised median. Immediately before that movement, the visible occupant is not gripping the wheel; his hands are positioned to take it. My description of autonomous operation relies on the supplied context and the displayed vehicle recording, not on having been present. I do not know the exact incident date and do not identify it as an April or May event based only on a reference to a few months earlier.

19. A second received recording shows an internal leadership discussion identified as involving Aurora CEO Chris Urmson. A speaker raises a head-on-collision scenario and asks about avoiding it by leaving the roadway. The speaker identified as Urmson explains that the current Aurora Driver will not leave the road to avoid an object in its path and describes this as intentional. This describes the recording I reviewed; it is not a certified transcript. I retained both received video copies for a Court-directed submission process.

20. The public screenshots are copies of the materials received, apart from disclosed redactions and scaling to fit exhibit pages. Employee names, potentially identifying interface information, and precise coordinates are withheld where

present. I am protecting the source's identity in this public submission. I do not know whether Aurora gave these materials to FMCSA.

21. The internal materials and GENLOGS reports described above became available to me on October 4, after my reply had been filed. I could not include those copies in that reply. I am providing these new facts promptly for the Court's consideration.

22. Before I received notice of the Court's October 5, 2026 order, I was preparing to file a supplement to my emergency request using the travel facts and materials described in this declaration. I intended to submit that information today, October 5, 2026.

23. I then received notice of the October 5 order denying the motion for a stay and expedition. My proposed supplement had not been filed when I received that order. Supplemental Exhibit G is a copy of that order. I submit these facts and materials promptly with the renewed emergency request.

24. Last week, while investigating Stack's operating entity, I identified the Texas DPS-hosted First Responder Interaction Plan V.3.0. Its tractor-identification page names Truck OpCo LLC, USDOT 4087587. That identification led to the later Stack OpCo LLC name and the separate Stack AV Co. corporation. Supplemental Exhibit I reproduces the preserved plan excerpt and related federal and Pennsylvania records.

25. The preserved Pennsylvania records identify Stack OpCo LLC as a foreign limited liability company registered May 31, 2023, and Stack AV Co. as a separate foreign corporation registered November 10, 2022. The registry history shows a June 9, 2026 amendment from Truck OpCo LLC to Stack OpCo LLC. The preserved FMCSA carrier record identifies Stack OpCo LLC, USDOT 4087587, MC 1556450, 36 power units, and 21 drivers. My investigation has identified no USDOT or MC registration for the separate Stack AV Co.; the preserved federal legal-name/DBA query contains no Stack AV match.

26. The 26 preserved detailed inspection records all name Truck OpCo LLC and USDOT 4087587. Ten follow the June 9 name amendment. Five occurred after July 9: July 21 in Texas, August 3 in Wyoming, August 10 in Louisiana, and August 17 and 26 in Mississippi. The complete captured records span nine states: Alabama, Louisiana, Mississippi, North Carolina, Nebraska, New Mexico, Ohio, Texas, and Wyoming. Exhibit I reproduces the inspection transcription, source links, and supplied full history.

27. Supplemental Exhibit J reproduces selected official pages from the Third Amended NHTSA Standing General Order 2021-01, issued April 24, 2025 and effective June 16, 2025. The service list names Stack AV. Neither Truck OpCo LLC nor Stack OpCo LLC appears in the full service list. The selected pages show

the service requirement, operator and reporting-entity definitions, reporting responsibility, and Stack AV entry. I rely on the official order for these statements;

28. Supplemental Exhibit K reproduces the Texas public automated-vehicle record totals and complete vehicle lists preserved October 5, 2026. They list 91 vehicles for Aurora Operations Inc., USDOT 3441156, and 33 for Kodiak Robotics Inc., USDOT 3172855, for 124 combined. Both companies have an authorized automated-vehicle status. These are the vehicles listed in the official Texas automated-vehicle roster.

29. My September 25 briefing identified Kodiak's September 25 company announcement of 35 Atlas-owned and operated driverless trucks as of June 30. Exhibit K summarizes that official announcement and identifies its source.

30. As an interstate commercial driver sharing these corridors, I fear catastrophic injury or death from an autonomous truck's unresolved failure or roadside obstruction without effective advance warning. The received recovery, non-interference, staffing, and head-on discussion materials make that danger concrete to me. In my view, intentionally retaining a truck on the roadway when an evasive off-road path could protect a person raises a grave question of preserving the vehicle over human life.

I declare under penalty of perjury that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on October 5, 2026, at Northbrook, Illinois.



______________________________

Kostas Giannoulias

**Certificate of service**

I certify that on October 5, 2026, I served a complete copy of this motion, supplemental declaration, and Supplemental Exhibits A-K on counsel for Respondent identified below by the following method:

__Electronic service through Court's CM/ECF system upon docketing by the clerk__

Benjamin T. Takemoto, Counsel for Respondent
Steven A. Myers, Counsel for Respondent
Appellate Staff, Civil Division, Room 7258
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
benjamin.takemoto@usdoj.gov
steven.a.myers@usdoj.gov

______________________________
Kostas Giannoulias

**Index of supplemental exhibits**

Supplemental Exhibit A GENLOGS carrier maps and camera reports (5 pages)

Supplemental Exhibit B NVO non interference and pull over procedures (2 pages)

Supplemental Exhibit C Recovery passenger and delayed intervention slides (2 pages)

Supplemental Exhibit D Mission Control staffing and call performance notes (1 page)

Supplemental Exhibit E Disengagement and lane selection communications (3 pages)

Supplemental Exhibit F July 9 2026 agency decision and waiver terms (8 pages)

Supplemental Exhibit G October 5 2026 Court order denying stay and expedition (1 page)

Supplemental Exhibit H October 2 2026 encounter photograph (1 page)

Supplemental Exhibit I Carrier identity, inspections, and Texas responder plan (9 pages)

Supplemental Exhibit J Selected official NHTSA Standing General Order pages (4 pages)

Supplemental Exhibit K Official Texas 124-vehicle roster and Kodiak disclosure (6 pages)

Public exhibits retain disclosed privacy redactions. Source copies are preserved. Bills of lading and videos are not publicly attached. Exhibits A-E reproduce received copies; F is the challenged decision; G is the denial; H is the encounter photograph; I-K contain the additional official-record evidence and identified company disclosure.

**Supplemental Exhibit A Page 1 of 5**

Aurora one year confirmed location view received October 4



**Supplemental Exhibit A Page 2 of 5**

Truck OpCo now displayed as Stack OpCo one year location view



**Supplemental Exhibit A Page 3 of 5**

Truck OpCo Altamont Illinois displayed date December 2 2025

**Tue, Dec 2, 2025, 8:54:34 AM EST**

**Altamont, IL, Road 70WB**

Show Nearby Traffic

**Cab Identifiers**

USDOT: 4087587

MC: 1556450

Truck License Plate: ---

Cab Number: 024

Power Unit VIN: ---

Cab Color: ---

Cab Make: ---

**Equipment Identifiers**

Equipment Logo: ---

Trailer Number: ---

Chassis #: ---

Container #: ---

Equipment Type: Sleeper Cab

Hazmat: No

**Metadata Identifiers**

Record ID: 262b22da664b64f4af601356d4a45f7d5cfacb9a72a996ce268e01876fe5ab90

Sensor ID: gl20251047

Show nearby traffic

Image ID not available




5650ca0ee9ee68fffcb733038da4134a7430af2b02252fb949396ce49f...




af01b2abf5d0a7e67a5a595191970e7096979cd3eeadf219fff4974d6412...

**Supplemental Exhibit A Page 4 of 5**

Stack OpCo Cotterel Idaho October 1 2026

**Thu, Oct 1, 2026, 5:19:46 PM EDT**

**Cotterel, ID, Road 84EB**

Show Nearby Traffic

**Cab Identifiers**

USDOT: 4087587

MC: 1556450

Truck License Plate: ah5

Cab Number: 040

Power Unit VIN: ---

Cab Color: White

Cab Make: Peterbilt

**Equipment Identifiers**

Equipment Logo: Amazon, Xtra

Trailer Number: w38137

Chassis #: ---

Container #: ---

Equipment Type: Dry Van, Sleeper Cab

Hazmat: No

**Metadata Identifiers**

Record ID: 61aa87f96b34a79ae62a30238496c88ecc3e8f326528f21bfe037c3c5a53cebc

Sensor ID: gl20240148




c089e0685a26dabd529027582aa9533a825c075f29bc6fb75704f3dc...




4427540fb0c055a7d053a0755b0c607d3ac3d4a0a87b3e0e4bae21ce...




ba265db3de4f246df1f139f29c2404cbac37397605b443a35acc886a9...

**Supplemental Exhibit A Page 5 of 5**

Stack OpCo Bentleyville Pennsylvania October 2 2026

**Fri, Oct 2, 2026, 11:19:02 AM EDT**

**Bentleyville, PA, Road 70WB**

Show Nearby Traffic

**Cab Identifiers**

USDOT: 4087587

MC: 1556450

Truck License Plate: ah59228

Cab Number: 030

Power Unit VIN: VIC0100

Cab Color: White

Cab Make: Peterbilt

**Equipment Identifiers**

Equipment Logo: Pitt Ohio

Trailer Number: ht54310

Chassis #: ---

Container #: ---

Equipment Type: Sleeper Cab, Dry Van

Hazmat: No

**Metadata Identifiers**

Record ID: a05c22835202f5ef62e6b13df0c989fef0abdf0de52f5e0732a2221c0085cb5d

Sensor ID: gl20240164




9e60195bfdd03797e38ef4c8f1c732223a8cfee3d49d12310a61388536...




27fc10c1f848faf22a8eeccf61961b9e152161477b965ee478023dbeb007...




9a829591c9b76cdff23529533c9ce8a00bdd8d4ea3969ebf4c40a18ad...

**Supplemental Exhibit B Page 1 of 2**

[redacted]

**Supplemental Exhibit B Page 2 of 2**

Arrival and remote assist

[redacted]

**Supplemental Exhibit C Page 1 of 2**

[redacted]

**Supplemental Exhibit C Page 2 of 2**

[redacted]

**Supplemental Exhibit D Page 1 of 1**

[redacted]

**Supplem** [redacted]

**Supplemental Exhibit E Page 2 of 3**

[redacted]

**Supplemental Exhibit E Page 3 of 3**

[redacted]

**Supplemental Exhibit F Page 1 of 8**

U.S. Department
of Transportation

Federal Motor Carrier
Safety Administration

Administrator

1200 New Jersey Ave, SE
Washington, DC 20590

July 9, 2026

Shelley Webb
Chief Legal Officer
Aurora Operations, Inc.
280 N. Bernardo Ave.
Mountain View, CA 94043

Dear Ms. Webb:

The Federal Motor Carrier Safety Administration (FMCSA) grants a limited waiver, subject to the attached terms and conditions, to Aurora Operations, Inc. (Aurora) from compliance with the warning device placement requirements in 49 CFR § 392.22(b), the steady-burning lamp requirement in 49 CFR § 393.25(e), and the requirements for the types and number of warning devices in 49 CFR § 393.95(f), to allow Aurora to use cab-mounted warning beacons in lieu of the warning devices required by 49 CFR § 393.95(f). This waiver is effective from 12:00 a.m. on July 10, 2026, through 11:59 p.m. on October 9, 2026.

This waiver covers Aurora's operation of Level 4 Automated Driving System (ADS) commercial motor vehicles (CMVs) subject to the Federal Motor Carrier Safety Regulations. This waiver also permits any other motor carrier to operate under the waiver, provided that it first notifies FMCSA in writing, certifying that it currently has cab-mounted warning beacons, the ability to comply with all terms and conditions of this waiver, and that it will comply with all terms and conditions of the waiver. FMCSA may publish on its website a copy of the waiver and a list of motor carriers operating under the waiver. Kodiak Robotics, Inc., USDOT No. 3172855, and Waabi Logistics Inc., USDOT No. 3906293, have provided written notification to FMCSA that they are also operating under the waiver.

Under 49 U.S.C. §§ 31136(e) and 31315(a), FMCSA may grant a waiver if it determines that it is in the public interest to grant the waiver and that the waiver is likely to achieve a level of safety that is equivalent to, or greater than, the level of safety that would be obtained in the absence of the waiver. FMCSA may grant a waiver for nonemergency and unique events, limited in scope and circumstances, for a period not in excess of three months. Although FMCSA previously denied Aurora's request for an exemption (89 FR 105675, December 27, 2024), FMCSA has now determined that it is in the public interest to issue a waiver, limited in scope and circumstances, that is likely to achieve a level of safety that is equivalent to, or greater than, the level of safety that would be obtained in the absence of the waiver.

FMCSA reviewed information provided by Aurora in support of its request for exemption. FMCSA has determined that the attached waiver is narrower in scope than the broad exemption request from Waymo LLC and Aurora that FMCSA previously denied. In this regard, the exemption request sought industry-wide regulatory relief whereby any motor carrier operating Level 4 ADS-equipped CMVs could operate under the waiver without any prior notice to FMCSA. In denying the exemption, FMCSA found that the applicants' request to "exempt a class of unspecified carriers using unspecified equipment on unspecified vehicles only further undermines the claimed likely equivalent level of safety." This waiver cures that deficiency, as it would apply to Aurora, and would not apply to other motor carriers operating Level 4 ADS-equipped CMVs unless they provide written notification to FMCSA and certify compliance with the waiver's terms and conditions.

Further, the waiver is narrower than the exemption request because it requires that operations occur primarily on the U.S. Interstate Highway System. In denying the exemption, FMCSA noted that "road curvatures or elevations may affect visibility of a beacon located in a fixed position on the cab." This waiver limits operations "primarily [to] the U.S. Interstate Highway System," where standardized road geometry minimizes the frequency of sharp curves and crests that could obstruct visibility. Moreover, the waiver's scope prohibits operations that would require a commercial driver's license endorsement (*e.g.*, tank vehicles, double/triple trailers) if a driver were present, as well as the transportation of passengers or hazardous materials.

In addition, the waiver includes technical specifications to resolve potential ambiguity. In denying the exemption, FMCSA stated that the application did not "provide sufficient details about the proposed alternative devices," particularly with the vague allowance for "any configuration of similar effectiveness." In contrast, Section III.B of the waiver mandates specific mounting, location, and photometric performance standards (SAE J595). The waiver also imposes additional requirements for when the beacons must activate and how long they must remain flashing. Further, the waiver does not allow for configuration flexibility outside the terms and conditions set forth in the waiver. Moreover, Section III.B.6 of the waiver requires that the beacons "be designed and installed with redundant power sources to prevent failure due to a single-point power failure," which FMCSA previously noted as a deficiency with the exemption application.

In denying the exemption, FMCSA also stated that Aurora's naturalistic study submitted in support of the application showed that a lower percentage of drivers responded to the beacons than to warning triangles in five of eight scenarios presented: daytime tests at left curve and straight locations, and nighttime tests at crest, right curve, and straight locations. However, under the waiver, the curve and crest scenarios would be present to a much more limited degree, since operations must occur primarily on the U.S. Interstate Highway System, and the differences in driver response at straight locations were immaterial (*i.e.*, less than four-tenths of one percent), according to the study. Moreover, as FMCSA noted, Aurora's study concluded that a warning beacon elicited a higher percentage of responses than warning triangles overall. FMCSA has noted in a research context "the historically unresolved questions of whether the use of such [warning] devices improves traffic safety and, if so, how and to what extent." (90 FR 1591, January 8, 2025). Without information on the level of safety the current regulatory requirements provide, the two studies submitted in support of Aurora's application reasonably

support a determination that motorists detect and respond to the beacons at a similar rate as existing warning devices under the terms and conditions imposed by this waiver.

Finally, the waiver addresses concerns about the lack of monitoring controls by requiring specific, detailed reporting requirements to allow FMCSA to monitor the safety performance of motor carriers operating under the waiver. In denying the exemption, FMCSA concluded that the application "lacks necessary monitoring controls to ensure highway safety." Section IV of this waiver implements these exact controls by requiring detailed crash and term reporting. Specifically, under Section IV.B, Aurora, and any other motor carriers operating under the waiver, must provide FMCSA with aggregate data on beacon activation events, reports on the performance and reliability of the beacon systems—including malfunctions—and the specific mounting locations used (within the terms and conditions set forth in the waiver). This will allow FMCSA to oversee the safety performance of the alternative technology continuously and to gather critical data, while monitoring activities under the waiver. Finally, Aurora, and any other motor carriers operating under the waiver, are required to meet with FMCSA upon request to provide information about the beacons' performance.

For these reasons, FMCSA finds the waiver is likely to achieve a level of safety that is equivalent to, or greater than, the level of safety that would be obtained in the absence of the waiver. In addition, FMCSA finds that it is in the public interest to grant the waiver to promote innovation and to enable commercial deployment of ADS CMVs to enhance safety and mobility for the American public. Finally, FMCSA finds that deployment of cab-mounted warning beacons in Level 4 ADS-equipped CMVs is a unique and nonemergency event because the operation of a CMV without a driver who can place warning devices on the roadway has never occurred previously.

Sincerely,

Derek D. Barrs
Administrator

Attachment

CC: Jordan Coleman, Kodiak Robotics, Inc. (jordan@kodiak.ai)
Joonsik Maing, Waabi Logistics Inc. (jmaing@waabi.ai)

**Waiver of Warning Device Requirements**

**TERMS AND CONDITIONS OF THE WAIVER**

## I. PERIOD OF THE WAIVER

This waiver from the warning device placement requirements in 49 CFR § 392.22(b), the steady-burning lamp requirement in 49 CFR § 393.25(e), and the requirements for the types and number of warning devices in 49 CFR § 393.95(f), is approved for the three-month period from 12:00 a.m. on July 10, 2026, through 11:59 p.m. on October 9, 2026. Thereafter, absent violation of the terms and conditions of this waiver, or a notification under section IV.D. below, or a determination by the Federal Motor Carrier Safety Administration (FMCSA) of a safety deficiency under 49 U.S.C. 31315(a), this waiver will be reissued.

## II. EXTENT OF THE WAIVER

**A. Applicability to Aurora Operations, Inc**
This waiver applies to Aurora Operations, Inc. (Aurora) for its operation of commercial motor vehicles (CMVs) equipped with a Level 4[1] Automated Driving System (ADS). This waiver also extends to any other motor carrier operating CMVs with a Level 4 ADS, provided such motor carrier provides written notification to FMCSA that includes the certifications specified in Section II(B).

**B. Applicability to Other Motor Carriers**
Any other motor carrier intending to operate CMVs under the terms and conditions of this waiver must notify FMCSA in writing prior to commencing operations covered by this waiver and must not commence operations until FMCSA acknowledges receipt of the notification, or the expiration of one business day after delivery, whichever occurs sooner. A motor carrier that previously sent FMCSA a written notification certifying the information below need not send an additional notification. The notification must be sent to FMCSA via email to MCPSV@dot.gov certifying the following:

1. The motor carrier's legal name, USDOT number, and principal place of business, and point of contact of the motor carrier.
2. A statement that adequately demonstrates the motor carrier currently has cab-mounted warning beacons and the ability to comply with all terms and conditions of this waiver.
3. A statement affirming the motor carrier will comply with all terms and conditions of this waiver.
4. In accordance with 28 U.S.C. 1746, the statements required under this Section must include language in substantially the following form, "I, [Name], certify under penalty of perjury that the foregoing is true and correct. Executed on [Date], [Signature]."

---

[1] As used in this waiver, the term "Level 4" has the same meaning as Level 4 High Driving Automation set forth in SAE J3016.

**C. Use of Cab-Mounted Warning Beacons**

Aurora and any other motor carrier operating under the terms and conditions of this waiver (hereinafter "each motor carrier operating under this waiver") pursuant to either Section II(A) or (B) may use cab-mounted warning beacons subject to the conditions in Sections III and IV, below, in lieu of warning device placement requirements in 49 CFR § 392.22(b), the steady-burning lamp requirement in 49 CFR § 393.25(e), and the requirements for the types and number of warning devices in 49 CFR § 393.95(f).

**III. CONDITIONS**

This waiver is contingent upon each of the following conditions.

**A. Operations**

1. Each motor carrier operating under this waiver, may operate its eligible Level 4 ADS-equipped CMVs under this waiver.
2. Operations under this waiver shall primarily occur on the U.S. Interstate Highway System. Operations on other public roads are permitted when operationally necessary to complete movements or access operational facilities, provided such roads are part of the validated Operational Design Domain for the specific ADS-equipped CMV.
3. Operations under this waiver are prohibited if operations would otherwise require a "N", "H", "X", "P", "S", or "T" endorsement under 49 CFR 383.93—if a human driver were present.
4. Each motor carrier operating under this waiver is prohibited from operating as a for-hire passenger carrier or private passenger carrier, or transporting hazardous materials as defined in 49 CFR § 383.5, while utilizing this waiver.

**B. Cab-Mounted Warning Beacon Specifications**

1. The cab-mounted warning beacons, a safety device, used under this waiver must consist of forward- and rearward-facing flashing lights.
2. <u>Mounting.</u> At least one rearward-facing light must be mounted on each side of the cab, and at least one forward-facing light mounted on the front of the cab. The mountings must provide stable support for the beacons. The total width of the vehicle, inclusive of mountings and lights, may not exceed 122 inches.
3. <u>Location.</u> All lights must be mounted at least 100 inches from the ground and located at or above the upper edge of the sideview mirrors but below the top edge of the cab.
4. <u>Performance.</u> The cab-mounted warning beacons must be amber in color and meet the Class 1 photometric performance requirements of SAE J595.
5. <u>Flash Pattern.</u> The activation of the warning system must cause the beacons to flash at a rate different from the vehicle's standard hazard warning signal flashers required under 49 CFR § 392.22(a).

6. Power. The beacons must be designed and installed with redundant power sources to prevent failure due to a single-point power failure.

**C. Activation and Operation:**

1. The beacons must activate as soon as possible, but in any event within 10 minutes, whenever the CMV is stopped on the traveled portion or the shoulder of a highway for any cause other than necessary traffic stops (i.e., whenever 49 CFR § 392.22(b) would otherwise apply).
2. The beacons must remain flashing for the entire duration of the stop, from the initial stop until the vehicle reinitiates movement or the vehicle is recovered.
3. Standard hazard warning signal flashers must also activate as required by 49 CFR § 392.22(a) and must continue flashing for the entire duration of the stop.

**D. Other**

1. Each motor carrier operating under this waiver, must comply with all other applicable Federal Motor Carrier Safety Regulations (49 CFR parts 350-399).
2. Each motor carrier operating under this waiver, shall, at FMCSA's request, meet with FMCSA to answer questions regarding data and information required to be provided under this waiver.
3. Each motor carrier operating under this waiver, may also apply for an exemption under 49 U.S.C. 31315(b)(3).

## IV. REPORTING REQUIREMENTS

**A. Crash Reporting**

Each motor carrier operating under this waiver, must notify FMCSA via email to MCPSV@dot.gov not later than 5 calendar days of any crash involving a CMV while the cab-mounted warning beacons are activated or should have been activated per the conditions of this waiver. For the purposes of this waiver, the term "crash" shall have the same meaning as defined in the National Highway Traffic Safety Administration's (NHTSA) Third Amended Standing General Order (SGO) 2021-01.[2]

Notification must include all available information regarding the circumstances of the crash, including the following information:

1. Identifier of the Waiver ("Waiver of Warning Device Requirements").
2. Date and time of the crash.
3. City or town, and State, in which the crash occurred, or closest to the crash scene, and geolocation information.

---

[2] Under NHTSA's Third Amended SGO 2021-01, "'Crash' means any physical impact between a vehicle and another road user (vehicle, pedestrian, cyclist, etc.) or property that results or allegedly results in any property damage, injury, or fatality. A subject vehicle is involved in a crash if it physically impacts another road user or if it contributes or is alleged to contribute (by steering, braking, acceleration, or other operational performance) to another vehicle's physical impact with another road user or property involved in that crash." The SGO is available at: https://www.nhtsa.gov/sites/nhtsa.gov/files/2025-04/third-amended-SGO-2021-01_2025.pdf.

4. Vehicle Identification Number (VIN).
5. Description of any property damage.
6. Number of individuals suffering physical injury.
7. Number of fatalities.
8. The police-reported narrative of the crash (if available at the time of the report or provided upon its completion).

**B. Waiver Term Report**

Each motor carrier operating under this waiver, must submit a report to FMCSA via email to MCPSV@dot.gov not later than 30 calendar days of the end of this waiver's term (or not later than 30 calendar days of ceasing operations under this waiver, if sooner). This report must include the following information covering the entire period of operation under this waiver:

1. Total number of its CMVs that operated under the waiver.
2. Total vehicle miles traveled by its CMVs under the waiver.
3. Aggregate data on the frequency, duration, location (including road type: Interstate, state highway, local road, etc.), and reason for cab-mounted warning beacon activation events for its CMVs.
4. A summary of the overall performance and reliability of the cab-mounted warning beacons and their activation systems on its CMVs, including any malfunctions or power issues experienced.
5. The specific mounting locations of all cab-mounted warning beacons used on its CMVs.
6. Whether any variations in cab-mounted warning beacon types, mounting, or flash patterns were used across its fleet when operating under the waiver. If variations were used, any performance differences among the beacons.

**C. Request to Treat Information as Confidential Business Information (CBI)**

Nonpublic information submitted by a motor carrier under Section IV(A) or (B) above will be treated as CBI, which is defined as commercial or financial information that is both customarily and actually treated as private by its owner,[3] if designated as such by the submitting motor carrier. FMCSA will withhold CBI from public disclosure to the greatest extent possible consistent with the Freedom of Information Act (5 U.S.C. 552), and DOT's implementing regulations at 49 CFR Part 7.

**D. Safety Notification to FMCSA**

Each motor carrier operating under this waiver, must notify FMCSA via email to MCPSV@dot.gov not later than 5 calendar days after it becomes aware, or otherwise determines, that the continued use of cab-mounted beacons covered by this waiver is no longer likely to maintain a level of safety that is at least equivalent to the level that would be achieved absent this waiver.

[3] *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019).

## V. PREEMPTION

In accordance with 49 U.S.C. 31315(d), as implemented by 49 CFR § 381.600, during the period this waiver is in effect, no State shall enforce any law or regulation applicable to interstate commerce that conflicts with or is inconsistent with this waiver with respect to a firm or person operating under the waiver. States may, but are not required to, adopt the same waiver with respect to operations in intrastate commerce.

## VI. TERMINATION

FMCSA will terminate this waiver with respect to any specific motor carrier if: (1) that motor carrier fails to comply with the terms and conditions of this waiver; (2) that motor carrier's operation under the waiver results in a lower level of safety than was maintained before it was granted; or (3) continuation of the waiver for that motor carrier would not be consistent with the goals and objectives of 49 U.S.C. 31136(e) and 31315(a).

# Supplemental Exhibit G Page 1 of 1



## UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**ORDER**

October 5, 2026

*Before*

MICHAEL Y. SCUDDER, *Circuit Judge*
DORIS L. PRYOR, *Circuit Judge*
NANCY L. MALDONADO, *Circuit Judge*

| | |
|---|---|
| No. 26-2838 | KOSTAS GIANNOULIAS,<br>Petitioner<br><br>v.<br><br>FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,<br>Respondent |
| **Originating Case Information:** | |
| Agency Case No: FMCSA-2026-0958<br>Federal Motor Carrier Safety Administration | |

The following are before the court:

1. **EMERGENCY MOTION FOR IMMEDIATE ADMINISTRATIVE STAY, STAY PENDING REVIEW, AND EXPEDITED PROCEEDINGS**, filed on September 8, 2026, by the pro se petitioner.

2. **RESPONSE TO EMERGENCY MOTION FOR IMMEDIATE ADMINISTRATIVE STAY, STAY PENDING REVIEW, AND EXPEDITED PROCEEDINGS**, filed on September 21, 2026, by counsel for the respondent.

3. **PETITIONER'S REPLY IN SUPPORT OF EMERGENCY MOTION FOR ADMINISTRATIVE STAY, STAY PENDING REVIEW, AND EXPEDITED PROCEEDINGS**, filed on September 22, 2026, by the pro se petitioner.

**IT IS ORDERED** that the motion for a stay and to expedite the appeal is **DENIED**.

## Supplemental Exhibit H Page 1 of 1

Petitioner's encounter photograph: October 2, 2026, approximately 10:14 a.m. CDT; northbound I-35, Texas, near mile marker 60. Date and location are supplied by his declaration.



# Supplemental Exhibit I Page 1 of 9

Selected preserved carrier records; underlying official sources and capture information appear on each page.

## EXHIBIT 11, PART A - CARRIER IDENTITY

Selected fields from the official FMCSA Company Census

| | |
|---|---|
| Legal name | STACK OPCO LLC |
| USDOT number | 4087587 |
| Operating-authority docket | MC-1556450 |
| DBA field | No DBA field/value present in the returned carrier record |
| MCS-150 date | August 27, 2026 |
| Power units / drivers | 36 / 21 |

Official source: https://data.transportation.gov/resource/az4n-8mr2.json?%24where=dot_number%3D%274087587%27&%24limit=10

Captured (UTC): 2026-09-30T22:10:57.788520+00:00
SHA-256 of preserved source: 0b322bed509fa58ba72ec30b5ce4058b0287d009bb21749b1969c95604ba5ae0

### Pennsylvania entity records

| | |
|---|---|
| Stack OpCo LLC | Foreign Limited Liability Company; filing number 0013454769; creation date May 31, 2023 |
| Stack AV Co. | Foreign Business Corporation; filing number 0003559631; creation date November 10, 2022 |

Official source: https://data.pa.gov/resource/xvd7-5r2c.json?%24where=upper%28business_name%29+like+%27%25TRUCK+OPCO%25%27+OR+upper%28business_name%29+like+%27%25STACK+OPCO%25%27+OR+upper%28business_name%29+like+%27%25STACK+AV%25%27&%24limit=100

Captured (UTC): 2026-09-30T22:10:59.730382+00:00
SHA-256 of preserved source: e499a92c42d1d482da902ec03438149f55e685504fb76c4c6b0c434d3c16af67

# Supplemental Exhibit I Page 2 of 9

Selected preserved carrier records; underlying official sources and capture information appear on each page.

## EXHIBIT 11, PART A - NAME AMENDMENT

The supplied Pennsylvania registry History image records an Amendment of Foreign Registration Statement dated June 9, 2026, Control ID 0015557765, from Truck OpCo LLC to Stack OpCo LLC. This is the displayed Pennsylvania foreign-registration amendment; it does not establish the effective date of a separate Delaware filing.




Source: user-supplied Pennsylvania registry History screenshot, preserved without alteration.

## Supplemental Exhibit I Page 3 of 9

Selected preserved carrier records; underlying official sources and capture information appear on each page.

### EXHIBIT 11, PART A - BRAND-NAME QUERY

A query of the official Company Census for legal-name or DBA-name strings containing STACK AV or TRUCK AV returned no STACK AV match. Its only result was the unrelated inactive TRUCK AVENUE LLC, USDOT 3704350. The identifiable operating-carrier record is STACK OPCO LLC, USDOT 4087587. This is a current query result, not a certification of the entire historical registration database.

Query: https://data.transportation.gov/resource/az4n-8mr2.json?%24where=upper%28legal_name%29+like+%27%25STACK+AV%25%27+OR+upper%28dba_name%29+like+%27%25STACK+AV%25%27+OR+upper%28legal_name%29+like+%27%25TRUCK+AV%25%27+OR+upper%28dba_name%29+like+%27%25TRUCK+AV%25%27&%24limit=100

Captured (UTC): 2026-10-01T05:24:29.731338+00:00
SHA-256: 0f09466b0e82626213e7c30f2bf03522907ffa180a6a9a174d31ec0e2ad4d561

The displayed August 27 MCS-150 date does not alone establish the date of the first name-change submission or a missed deadline. The requested agency submissions and receipt records address those questions.

## Supplemental Exhibit I Page 4 of 9

Selected preserved carrier records; underlying official sources and capture information appear on each page.

### EXHIBIT 11, PART B - INSPECTION HISTORY

All 26 detailed SMS records identify Truck Opco Llc and USDOT 4087587. Ten inspections occurred after the June 9, 2026 Pennsylvania amendment. The most recent inspection occurred August 26, 2026, in Mississippi, Report MS1026012792.

Inspection states and counts: AL 3, LA 3, MS 2, NC 1, NE 1, NM 10, OH 1, TX 4, WY 1. There are 21 Fixed Site and five Roadside records. Inspection state is distinct from the Pennsylvania plate-registration state. These records establish recorded inspection locations, not autonomous mode or actual waiver use on each inspection.

| Date | Report | State | Carrier / USDOT | Facility | Plate / state |
|---|---|---|---|---|---|
| 8/26/2026 | MS1026012792 | MS | Truck Opco Llc 4087587 | Fixed Site | AH59232 / PA |
| 8/17/2026 | MS1031013855 | MS | Truck Opco Llc 4087587 | Fixed Site | AH59227 / PA |
| 8/10/2026 | LALAKHS01410 | LA | Truck Opco Llc 4087587 | Roadside | AH59216 / PA |
| 8/3/2026 | WYPCDO001810 | WY | Truck Opco Llc 4087587 | Fixed Site | AH59238 / PA |
| 7/21/2026 | TXV262499741 | TX | Truck Opco Llc 4087587 | Fixed Site | AH59226 / PA |
| 7/6/2026 | NM3862Q57FF3 | NM | Truck Opco Llc 4087587 | Fixed Site | AH59221 / PA |
| 6/29/2026 | LALALZS01122 | LA | Truck Opco Llc 4087587 | Roadside | AH59216 / PA |
| 6/29/2026 | NM2599Q50DR1 | NM | Truck Opco Llc 4087587 | Fixed Site | AH59221 / PA |
| 6/15/2026 | AL1867000242 | AL | Truck Opco Llc 4087587 | Fixed Site | AH59232 / PA |
| 6/15/2026 | OH9479000064 | OH | Truck Opco Llc 4087587 | Fixed Site | AH59231 / PA |
| 6/2/2026 | AL1750002618 | AL | Truck Opco Llc 4087587 | Roadside | AH59229 / PA |
| 4/22/2026 | NET390001629 | NE | Truck Opco Llc 4087587 | Fixed Site | AH59228 / PA |

# Supplemental Exhibit I Page 5 of 9

Selected preserved carrier records; underlying official sources and capture information appear on each page.

| Date | Report | State | Carrier / USDOT | Facility | Plate / state |
|---|---|---|---|---|---|
| 4/13/2026 | NM3173Q2VFJP | NM | Truck Opco Llc 4087587 | Fixed Site | AH59220 / PA |
| 4/1/2026 | NC0006861425 | NC | Truck Opco Llc 4087587 | Fixed Site | AH59217 / PA |
| 3/31/2026 | TXV262278668 | TX | Truck Opco Llc 4087587 | Fixed Site | AH59218 / PA |
| 3/4/2026 | TXV262248582 | TX | Truck Opco Llc 4087587 | Fixed Site | AH59216 / PA |
| 2/4/2026 | AL2178000545 | AL | Truck Opco Llc 4087587 | Roadside | AH59215 / PA |
| 1/28/2026 | TXV262184868 | TX | Truck Opco Llc 4087587 | Fixed Site | AH59215 / PA |
| 11/10/2025 | LALAFWS01036 | LA | Truck Opco Llc 4087587 | Roadside | AH59217 / PA |
| 7/28/2025 | NM3862P5TFX1 | NM | Truck Opco Llc 4087587 | Fixed Site | AH59217 / PA |
| 6/30/2025 | NM6248P51HMR | NM | Truck Opco Llc 4087587 | Fixed Site | AH59217 / PA |
| 3/23/2025 | NM6248P2AHMG | NM | Truck Opco Llc 4087587 | Fixed Site | AH59216 / PA |
| 2/20/2025 | NM3175P1FJ4S | NM | Truck Opco Llc 4087587 | Fixed Site | AH59216 / PA |
| 2/17/2025 | NM6248P1CHWQ | NM | Truck Opco Llc 4087587 | Fixed Site | AH59216 / PA |
| 12/9/2024 | NM0749O9KGJT | NM | Truck Opco Llc 4087587 | Fixed Site | AH50612 / PA |
| 9/19/2024 | NM1702O7B96S | NM | Truck Opco Llc 4087587 | Fixed Site | AH50614 / PA |

# Supplemental Exhibit I Page 6 of 9

Selected preserved carrier records; underlying official sources and capture information appear on each page.

## EXHIBIT 11, PART B - SOURCE LINKS

Each URL below is the corresponding official detailed SMS inspection page. All 26 pages were captured and preserved; their displayed carrier name, USDOT number, inspection state, date, and facility were checked against the supplied history.

8/26/2026 | MS1026012792 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/88801846.aspx

8/17/2026 | MS1031013855 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/88717719.aspx

8/10/2026 | LALAKHS01410 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/88667879.aspx

8/3/2026 | WYPCDO001810 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/88592866.aspx

7/21/2026 | TXV262499741 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/88553932.aspx

7/6/2026 | NM3862Q57FF3 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/88338448.aspx

6/29/2026 | LALALZS01122 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/88290952.aspx

6/29/2026 | NM2599Q50DR1 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/88295439.aspx

6/15/2026 | AL1867000242 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/88156267.aspx

6/15/2026 | OH9479000064 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/88165867.aspx

6/2/2026 | AL1750002618 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/88029170.aspx

4/22/2026 | NET390001629 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/87648081.aspx

4/13/2026 | NM3173Q2VFJP | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/87572525.aspx

4/1/2026 | NC0006861425 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/87485893.aspx

3/31/2026 | TXV262278668 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/87525995.aspx

3/4/2026 | TXV262248582 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/87216577.aspx

2/4/2026 | AL2178000545 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/86982442.aspx

1/28/2026 | TXV262184868 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/86915904.aspx

11/10/2025 | LALAFWS01036 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/86288550.aspx

7/28/2025 | NM3862P5TFX1 | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/85349709.aspx

6/30/2025 | NM6248P51HMR | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/85101370.aspx

3/23/2025 | NM6248P2AHMG | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/84207756.aspx

2/20/2025 | NM3175P1FJ4S | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/87077505.aspx

2/17/2025 | NM6248P1CHWQ | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/83909787.aspx

12/9/2024 | NM0749O9KGJT | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/83354492.aspx

9/19/2024 | NM1702O7B96S | https://ai.fmcsa.dot.gov/SMS/Event/Inspection/83997487.aspx

Capture interval (UTC): 2026-10-01T01:45:15.263616+00:00 through 2026-10-01T01:45:39.397115+00:00. Each source hash and unmodified HTML copy is preserved in the inspection source archive.

# Supplemental Exhibit I Page 7 of 9

Selected preserved carrier records; underlying official sources and capture information appear on each page.

## EXHIBIT 11, PART B - SUPPLIED FULL HISTORY

| | | | | | | |
|---|---|---|---|---|---|---|
| 8/26/2026 | MS1026012792 | MS | AH59232 | PA | STRAIGHT TRUCK | 3 |
| 8/17/2026 | MS1031013855 | MS | AH59227 | PA | TRUCK TRACTOR | 3 |
| 8/10/2026 | LALAKHS01410 | LA | AH59216 | PA | TRUCK TRACTOR | 3 |
| 8/3/2026 | WYPCDO001810 | WY | AH59238 | PA | TRUCK TRACTOR | 3 |
| 7/21/2026 | TXV262499741 | TX | AH59226 | PA | TRUCK TRACTOR | 3 |
| 7/6/2026 | NM3862Q57FF3 | NM | AH59221 | PA | TRUCK TRACTOR | 3 |
| 6/29/2026 | LALALZS01122 | LA | AH59216 | PA | TRUCK TRACTOR | 3 |
| 6/29/2026 | NM2599Q50DR1 | NM | AH59221 | PA | TRUCK TRACTOR | 3 |
| 6/15/2026 | AL1867000242 | AL | AH59232 | PA | TRUCK TRACTOR | 3 |
| Vehicle Maint. Violation: 393.203C-CBP Cab and Body Parts - Hood not securely fastened | | | | | | 2 |
| 6/15/2026 | OH9479000064 | OH | AH59231 | PA | TRUCK TRACTOR | 3 |
| 6/2/2026 | AL1750002618 | AL | AH59229 | PA | TRUCK TRACTOR | 3 |
| 4/22/2026 | NET390001629 | NE | AH59228 | PA | STRAIGHT TRUCK | 3 |
| 4/13/2026 | NM3173Q2VFJP | NM | AH59220 | PA | TRUCK TRACTOR | 3 |
| 4/1/2026 | NC0006861425 | NC | AH59217 | PA | TRUCK TRACTOR | 3 |
| 3/31/2026 | TXV262278668 | TX | AH59218 | PA | TRUCK TRACTOR | 3 |
| 3/4/2026 | TXV262248582 | TX | AH59216 | PA | TRUCK TRACTOR | 3 |
| 2/4/2026 | AL2178000545 | AL | AH59215 | PA | TRUCK TRACTOR | 2 |
| 1/28/2026 | TXV262184868 | TX | AH59215 | PA | TRUCK TRACTOR | 2 |
| 11/10/2025 | LALAFWS01036 | LA | AH59217 | PA | TRUCK TRACTOR | 2 |
| 7/28/2025 | NM3862P5TFX1 | NM | AH59217 | PA | TRUCK TRACTOR | 1 |
| Vehicle Maint. Violation: 393.75(a)(3) Tire-flat and/or audible air leak (OOS) | | | | | | 8 + 2 (OOS) |
| 6/30/2025 | NM6248P51HMR | NM | AH59217 | PA | TRUCK TRACTOR | 1 |
| 3/23/2025 | NM6248P2AHMG | NM | AH59216 | PA | TRUCK TRACTOR | 1 |
| 2/20/2025 | NM3175P1FJ4S | NM | AH59216 | PA | TRUCK TRACTOR | 1 |
| 2/17/2025 | NM6248P1CHWQ | NM | AH59216 | PA | TRUCK TRACTOR | 1 |
| 12/9/2024 | NM0749O9KGJT | NM | AH50612 | PA | TRUCK TRACTOR | 1 |
| 9/19/2024 | NM1702O7B96S | NM | AH50614 | PA | TRUCK TRACTOR | 1 |

REVIEWED-NOT PREVENTABLE CRASH ACTIVITY (VEHICLES INVOLVED IN CRASHES) Total Number of Crashes: 0

The source image is reproduced as supplied. The final numeric SMS profile column is a time-weight field; it is not represented as an inspection level.

## Supplemental Exhibit I Page 8 of 9

Selected preserved carrier records; underlying official sources and capture information appear on each page.

### EXHIBIT 11, PART C - TEXAS RESPONSE PLAN

The Texas DPS-hosted First Responder Interaction Plan states that Truck OpCo LLC and USDOT 4087587 are posted on each side of the tractor. The actual source page follows: PDF page 7, printed page 6.

| | |
|---|---|
| Source document | 29-page complete archived Texas DPS Stack First Responder Interaction Plan |
| Embedded document title | [FINAL] Stack First Responder Interaction Plan - 2026-04-03 Final |
| Complete archive capture | June 29, 2026, 19:09:23 UTC (20260629190923) |
| Archived Last-Modified header | April 21, 2026, 15:52:42 UTC |

The June 29 archived copy postdates the June 9 Pennsylvania amendment and retains the Truck OpCo LLC identification statement. The embedded version date, server modification date, and archive timestamp are identified for what they establish. None is represented as a Texas filing or receipt date.

Archived source: https://web.archive.org/web/20260629190923id_/https://www.dps.texas.gov/sites/default/files/documents/highwaypatrol/cav/plans/stack.pdf

Captured for preservation (UTC): 2026-09-30T23:38:27.486601+00:00
SHA-256 of complete 29-page source: 2f5b3ca8198ae0d01e1c30b44be3215428e9ddb5d353cd09b79a2cfb5da30484

## Supplemental Exhibit I Page 9 of 9

Selected preserved carrier records; underlying official sources and capture information appear on each page.

# Identifying a Stack AV Truck

STACK

- Stack trucks use three types of sensors: cameras, lidar, and radar.
- A group of sensors can be found along the visor line on the left and right side of the cab, below the rear-view mirrors, and on the front of the tractor.
- **Our legal business name, Truck OpCo LLC, and USDOT #4087587 are posted on each side of the tractor. For assistance on site, please call (412) 887-1424.**
- Truck OpCo LLC branding is located on the sides of the vehicle next to the driver and passenger side windows.
- Our tractor may be pulling a trailer that does not say “Truck OpCo LLC” or “Stack” on it.



First Responder Interaction Plan V.3.0 - 6

## Supplemental Exhibit J Page 1 of 4

Official Third Amended SGO 2021-01, April 24, 2025; source PDF page 3. Complete order: nhtsa.gov/sites/nhtsa.gov/files/2025-04/third-amended-SGO-2021-01_2025.pdf

ADS or Level 2 ADAS and to provide sufficient information for NHTSA to identify crashes warranting further follow-up. The requirements of this General Order are informed by NHTSA's implementation of prior versions of the General Order. This General Order revises certain requirements from prior versions that maintain the safety benefits of reporting while reducing unnecessary burdens.

Individual manufacturers and operators will be served with this General Order, which triggers the entity's legal obligations to report crashes as required by the General Order. NHTSA's oversight is not limited to the information collected through this General Order, and NHTSA will consider all information relevant to potential safety defects, including information regarding non-crash incidents, and may open defect investigations as warranted.

**DEFINITIONS**

For purposes of this General Order, the following terms, whether used in the singular, plural, possessive, or non-possessive forms, capitalized or uncapitalized, have the following definitions.

1. **"ADAS"** means an Advanced Driver Assistance System.
2. **"ADS"** means an Automated Driving System.
3. **"Advanced Driver Assistance System"** means a Level 1 or Level 2 system.
4. **"Automated Driving System"** means a Level 3, Level 4, or a Level 5 system and includes hardware and software that are collectively capable of performing the entire dynamic driving task on a sustained basis, regardless of whether it is limited to a specific operational design domain and regardless of the presence of a safety operator. For purposes of this General Order, a prototype of a system that is intended to function as an Automated Driving System in its mature form is an Automated Driving System.

## Supplemental Exhibit J Page 2 of 4

Official Third Amended SGO 2021-01, April 24, 2025; source PDF page 7. Complete order: nhtsa.gov/sites/nhtsa.gov/files/2025-04/third-amended-SGO-2021-01_2025.pdf

16. **"Operator"** means the entity operating a motor vehicle equipped with ADS on a publicly accessible road. An operator may also be a manufacturer.

17. **"Person"** means and includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1.

18. **"Reporting Entity"** means any company identified on the attached Service List for this General Order.

19. **"Subject Vehicle"** means and includes: (1) for a motor vehicle manufacturer responding to this General Order, a motor vehicle manufactured, imported, or operated by the manufacturer and equipped with an ADS or Level 2 ADAS; (2) for a motor vehicle equipment manufacturer responding to this General Order, a motor vehicle equipped with an ADS or Level 2 ADAS with any motor vehicle equipment (including software) manufactured or imported by the motor vehicle equipment manufacturer; and (3) for an operator responding to this General Order, a motor vehicle equipped with an ADS being operated by the operator.

20. **"Vulnerable Road User"** means and includes any person who is not an occupant of a motor vehicle with more than three wheels. This definition includes, but is not limited to, pedestrians, persons traveling in wheelchairs, bicyclists, motorcyclists, and riders or occupants of other transport vehicles that are not motor vehicles, such as all-terrain vehicles and tractors.

21. **"You"** or **"your"** means each individual manufacturer or operator to whom this General Order is directed.

## Supplemental Exhibit J Page 3 of 4

Official Third Amended SGO 2021-01, April 24, 2025; source PDF page 9. Complete order: nhtsa.gov/sites/nhtsa.gov/files/2025-04/third-amended-SGO-2021-01_2025.pdf

submission of reports under the terms of this General Order. You must also separately submit any report that you claim contains confidential business information (CBI) to NHTSA's Office of the Chief Counsel pursuant to the instructions set forth in Appendix B.

4. Each reporting entity is independently responsible for reporting incidents that involved their vehicles or equipment or ensuring that another appropriate reporting entity has reported the incident. When more than one reporting entity has responsibility for a vehicle or its equipment that is covered by this General Order, only one of the reporting entities needs to report the incident, unless they have notice of materially different information. If you are aware that you are filing a report involving the same crash of another existing report, NHTSA encourages reporting entities to list the Report ID for the other entry in the new report's narrative to help the agency correlate the two reports.

5. If a reporting entity submits an incident report (including an updated incident report) that it learns contains an error, the reporting entity should contact NHTSA at sgo202101-info@dot.gov as soon as possible to identify the issue. The reporting entity should also mention the correction in an updated incident report about the incident once the reporting entity determines a submission error exists. If appropriate, the reporting entity should also contact the Help Desk by email at MC.Helpdesk@dot.gov to request replacement of the erroneous report. All communications about the error should include the relevant Report ID.

6. NHTSA has determined that the information required by the incident report form set forth in Appendix C, with three exceptions, does not include any potential CBI exempt from public disclosure under either the Safety Act (49 U.S.C. § 30167(a)) or the Freedom of Information Act (5 U.S.C. § 552(b)(4)). Except for these three exceptions described below, the nature of the crash-related information required by the incident report form is widely available to

## Supplemental Exhibit J Page 4 of 4

Official Third Amended SGO 2021-01, April 24, 2025; source PDF page 32. Complete order: nhtsa.gov/sites/nhtsa.gov/files/2025-04/third-amended-SGO-2021-01_2025.pdf

George Feygin
Vice President and General Counsel
Porsche Cars North America, Inc.
One Porsche Drive
Atlanta, GA 30354

Robbie Miller
Chief Executive Officer and Chief Safety Officer
Pronto AI
1186 Folsom Street
San Francisco, CA 94103

Qian Yu
Chief Executive Officer
Qcraft.ai
3350 Scott Boulevard, Suite 3902
Santa Clara, CA 95054

Aine Shivnan
Vice President Engineering
Qualcomm Technologies, Inc.
5775 Morehouse Drive
San Diego, CA 92121

Ellice Perez
Director Parterships and Operations
Refraction.ai
200 Academy Drive, Suite 175
Austin, TX 78704

Aarjav Trivedi
Chief Executive Officer
Ridecell, Inc.
514 Bryant Street
San Francisco, CA 94107

Nancy Bell
Senior Legal Director, Regulatory Affairs and Policy
Rivian Automotive, LLC
13250 North Haggerty Road
Plymouth, MI 48170

Alberto Lacaze
President
Robotic Research
22601 Gateway Center Drive
Clarksburg, MD 20871

Blair Anderson
VP of Government and Regulatory Affairs
Scout Motors
437 Blythewood Road
Blythewood, SC 29016

Bryan Salesky
Chief Executive Officer
Stack AV
1001 Technology Drive
Suite 1129- Door 22G
Mount Pleasant, PA 15666

Dr. Anuja Sonalker
Chief Executive Officer
Steer Tech
10840 Guilford Road
Annapolis Junction, MD 20701

Alan DeGraw
Senior Counsel
Stellantis
800 Chrysler Drive
Auburn Hills, MI 48326-2757

**Supplemental Exhibit K Page 1 of 6**

## Texas public automated-vehicle roster: 124 vehicles

Official public records preserved October 5, 2026, at approximately 3:48 p.m. Central Daylight Time.

| Company / USDOT | AV authorization | Status | Vehicles |
| --- | --- | --- | --- |
| AURORA OPERATIONS INC / 3441156 | AV2312026781376 | Authorized | 91 |
| KODIAK ROBOTICS INC / 3172855 | AV6911226417664 | Authorized | 33 |
| **Combined total** | | | **124** |

The complete public vehicle lists follow, with the fields returned by the official lookup: VIN, model year, make, and model. All 124 VINs are distinct. The listing is a Texas authorization roster; it does not identify actual FMCSA waiver reliance or prove that each listed vehicle was then operating without a human driver.

Texas program: https://www.txdmv.gov/AVprogram

Aurora company page: https://txmccs.txdmv.gov/truckstop/companies/e2ec8d3a-51c0-47fd-8172-49b1ca545ad3/automated-motor-vehicles

Aurora official source: https://txmccs.txdmv.gov/api/TruckStop/companies/e2ec8d3a-51c0-47fd-8172-49b1ca545ad3/automated-motor-vehicles?limit=100&offset=0

Captured UTC: 2026-10-05T20:48:32.947400+00:00; SHA-256: 8314feede6952faaa4e856435ab1173605458fb3bd89bb24432ed77331410950

Kodiak company page: https://txmccs.txdmv.gov/truckstop/companies/51e635a0-1649-419d-86b4-76a3107e3240/automated-motor-vehicles

Kodiak official source: https://txmccs.txdmv.gov/api/TruckStop/companies/51e635a0-1649-419d-86b4-76a3107e3240/automated-motor-vehicles?limit=100&offset=0

Captured UTC: 2026-10-05T20:48:33.024213+00:00; SHA-256: bc8d291a8e860ef28ceffb0dc123712203231bf064b2567952d2f1e5e7a4e721

The public lookup data were preserved as returned. The tables are a formatted transcription of those records, not an image of the website interface.

# Supplemental Exhibit K Page 2 of 6

## Aurora: official roster entries 1-40 of 91

AURORA OPERATIONS INC | USDOT 3441156 | AV2312026781376

| No. | VIN | Year | Make | Model |
|---|---|---|---|---|
| 1 | 1XPBD49X8RD890532 | 2024 | PETERBILT | 579 |
| 2 | 3HSDZAPR4RN766648 | 2024 | INTERNATIONAL | LT62F |
| 3 | 4V4BC9EG7SN663716 | 2025 | VOLVO TRUCK | VNL (4) |
| 4 | 1XPBD49X2RD890526 | 2024 | PETERBILT | 579 |
| 5 | 1XPBD49X6PD824560 | 2023 | PETERBILT | 579 |
| 6 | 1XPBD49X5RD890522 | 2024 | PETERBILT | 579 |
| 7 | 1XPBD49X7ND824547 | 2022 | PETERBILT | 579 |
| 8 | 1XPBD49X6PD824557 | 2023 | PETERBILT | 579 |
| 9 | 1XPBD49X1RD890520 | 2024 | PETERBILT | 579 |
| 10 | 3HSDZAPRXRN766640 | 2024 | INTERNATIONAL | LT62F |
| 11 | 3HSDZAPR7TN366137 | 2026 | INTERNATIONAL | LT62F |
| 12 | 4V4BC9EG5SN663729 | 2025 | VOLVO TRUCK | VNL (4) |
| 13 | 1XPBD49X6RD890531 | 2024 | PETERBILT | 579 |
| 14 | 3HSDZAPR9TN366138 | 2026 | INTERNATIONAL | LT62F |
| 15 | 3HSDZAPR3TN365759 | 2026 | INTERNATIONAL | LT62F |
| 16 | 1XPBD49X4PD824556 | 2023 | PETERBILT | 579 |
| 17 | 4V4BC9EGXSN663712 | 2025 | VOLVO TRUCK | VNL (4) |
| 18 | 1XPBD49X5PD824551 | 2023 | PETERBILT | 579 |
| 19 | 4V4BC9EG9SN663717 | 2025 | VOLVO TRUCK | VNL (4) |
| 20 | 3HSDZAPR6TN656451 | 2026 | INTERNATIONAL | LT62F |
| 21 | 1XPBD49X6RD890528 | 2024 | PETERBILT | 579 |
| 22 | 3HSDZAPR8TN365269 | 2026 | INTERNATIONAL | LT62F |
| 23 | 1XPBD49X7PD890518 | 2023 | PETERBILT | 579 |
| 24 | 1XPBD49X9PD824553 | 2023 | PETERBILT | 579 |
| 25 | 1XPBD49X8RD890529 | 2024 | PETERBILT | 579 |
| 26 | 1XPBD49X0RD890525 | 2024 | PETERBILT | 579 |
| 27 | 4V4BC9EG5SN663715 | 2025 | VOLVO TRUCK | VNL (4) |
| 28 | 4V4BC9EG2SN663705 | 2025 | VOLVO TRUCK | VNL (4) |
| 29 | 1XPBD49X5ND811358 | 2022 | PETERBILT | 579 |
| 30 | 4V4BC9EG2SN663722 | 2025 | VOLVO TRUCK | VNL (4) |
| 31 | 4V4BC9EG8SN663725 | 2025 | VOLVO TRUCK | VNL (4) |
| 32 | 1XPBD49X2PD824555 | 2023 | PETERBILT | 579 |
| 33 | 3HSDZAPR4TN366418 | 2026 | INTERNATIONAL | LT62F |
| 34 | 1XPBD49X5PD869778 | 2023 | PETERBILT | 579 |
| 35 | 1XPBD49X3PD890516 | 2023 | PETERBILT | 579 |
| 36 | 3HSDZAPR2TN366417 | 2026 | INTERNATIONAL | LT62F |
| 37 | 1XPBD49X4RD890530 | 2024 | PETERBILT | 579 |
| 38 | 4V4BC9EGXSN663709 | 2025 | VOLVO TRUCK | VNL (4) |
| 39 | 3HSDZAPR5TN367142 | 2026 | INTERNATIONAL | LT62F |
| 40 | 1XPBD49X3PD869777 | 2023 | PETERBILT | 579 |

Source and preservation details are on the first page of this exhibit. Entry numbering follows the returned source order.

# Supplemental Exhibit K Page 3 of 6

## Aurora: official roster entries 41-80 of 91

AURORA OPERATIONS INC | USDOT 3441156 | AV2312026781376

| No. | VIN | Year | Make | Model |
|---|---|---|---|---|
| 41 | 3HSDZAPR3TN367141 | 2026 | INTERNATIONAL | LT62F |
| 42 | 3HSDZAPR8RN369797 | 2024 | INTERNATIONAL | LT62F |
| 43 | 1XPBD49X4RD890527 | 2024 | PETERBILT | 579 |
| 44 | 4V4BC9EG0SN663718 | 2025 | VOLVO TRUCK | VNL (4) |
| 45 | 3HSDZAPR7RN337603 | 2024 | INTERNATIONAL | LT62F |
| 46 | 3HSDZAPR7TN367143 | 2026 | INTERNATIONAL | LT62F |
| 47 | 4V4BC9EG1SN663713 | 2025 | VOLVO TRUCK | VNL (4) |
| 48 | 3HSDZAPR0TN366139 | 2026 | INTERNATIONAL | LT62F |
| 49 | 1XPBD49X5PD890517 | 2023 | PETERBILT | 579 |
| 50 | 3HSDZAPR0TN366416 | 2026 | INTERNATIONAL | LT62F |
| 51 | 1XPBD49X0PD824554 | 2023 | PETERBILT | 579 |
| 52 | 3HSDZAPR7TN366414 | 2026 | INTERNATIONAL | LT62F |
| 53 | 1XPBD49X7PD869779 | 2023 | PETERBILT | 579 |
| 54 | 1XPBD49X9RD890524 | 2024 | PETERBILT | 579 |
| 55 | 3HSDZAPR9TN366415 | 2026 | INTERNATIONAL | LT62F |
| 56 | 3HSDZAPR1TN366120 | 2026 | INTERNATIONAL | LT62F |
| 57 | 1XPBD49X3RD890535 | 2024 | PETERBILT | 579 |
| 58 | 1XPBD49X9RD890538 | 2024 | PETERBILT | 579 |
| 59 | 4V4BC9EG1SN663727 | 2025 | VOLVO TRUCK | VNL (4) |
| 60 | 3HSDZAPR6TN365755 | 2026 | INTERNATIONAL | LT62F |
| 61 | 4V4BC9EG3SN663714 | 2025 | VOLVO TRUCK | VNL (4) |
| 62 | 1XPBD49XXPD824559 | 2023 | PETERBILT | 579 |
| 63 | 1XPBD49X1ND824544 | 2022 | PETERBILT | 579 |
| 64 | 3HSDZAPR3TN366121 | 2026 | INTERNATIONAL | LT62F |
| 65 | 3HSDZAPR5TN366122 | 2026 | INTERNATIONAL | LT62F |
| 66 | 3HSDZAPR8TN365756 | 2026 | INTERNATIONAL | LT62F |
| 67 | 1XPBD49X8PD824558 | 2023 | PETERBILT | 579 |
| 68 | 1XPBD49X1PD890515 | 2023 | PETERBILT | 579 |
| 69 | 4V4BC9EG6SN663724 | 2025 | VOLVO TRUCK | VNL (4) |
| 70 | 4V4BC9EG8SN663711 | 2025 | VOLVO TRUCK | VNL (4) |
| 71 | 1XPBD49X5RD890536 | 2024 | PETERBILT | 579 |
| 72 | 1XPBD49XXRD890533 | 2024 | PETERBILT | 579 |
| 73 | 1XPBD49XXPD890514 | 2023 | PETERBILT | 579 |
| 74 | 3HSDZAPR4TN365270 | 2026 | INTERNATIONAL | LT62F |
| 75 | 1XPBD49X7RD890537 | 2024 | PETERBILT | 579 |
| 76 | 4V4BC9EG0SN663721 | 2025 | VOLVO TRUCK | VNL (4) |
| 77 | 4V4BC9EG6SN663710 | 2025 | VOLVO TRUCK | VNL (4) |
| 78 | 1XPBD49X7PD824552 | 2023 | PETERBILT | 579 |
| 79 | 1XPBD49X5RD890519 | 2024 | PETERBILT | 579 |
| 80 | 1XPBD49X3RD890521 | 2024 | PETERBILT | 579 |

Source and preservation details are on the first page of this exhibit. Entry numbering follows the returned source order.

# Supplemental Exhibit K Page 4 of 6

## Aurora: official roster entries 81-91 of 91

AURORA OPERATIONS INC | USDOT 3441156 | AV2312026781376

| No. | VIN | Year | Make | Model |
|---|---|---|---|---|
| 81 | 1XPBD49X7RD890523 | 2024 | PETERBILT | 579 |
| 82 | 1XPBD49X1RD890534 | 2024 | PETERBILT | 579 |
| 83 | 4V4BC9EG6SN663707 | 2025 | VOLVO TRUCK | VNL (4) |
| 84 | 3HSDZAPR8RN303993 | 2024 | INTERNATIONAL | LT62F |
| 85 | 4V4BC9EG4SN663723 | 2025 | VOLVO TRUCK | VNL (4) |
| 86 | 3HSDZAPR9TN366124 | 2026 | INTERNATIONAL | LT62F |
| 87 | 4V4BC9EGXSN663726 | 2025 | VOLVO TRUCK | VNL (4) |
| 88 | 4V4BC9EG2SN663719 | 2025 | VOLVO TRUCK | VNL (4) |
| 89 | 3HSDZAPR1TN365758 | 2026 | INTERNATIONAL | LT62F |
| 90 | 3HSDZAPR7TN366140 | 2026 | INTERNATIONAL | LT62F |
| 91 | 3HSDZAPR9TN366141 | 2026 | INTERNATIONAL | LT62F |

Source and preservation details are on the first page of this exhibit. Entry numbering follows the returned source order.

# Supplemental Exhibit K Page 5 of 6

## Kodiak: official roster entries 1-33 of 33

KODIAK ROBOTICS INC | USDOT 3172855 | AV6911226417664

| No. | VIN | Year | Make | Model |
|---|---|---|---|---|
| 1 | 1XPCD40XXVD829083 | 2027 | PETERBILT | 567 |
| 2 | 1XKYDP9X0LJ393582 | 2020 | KENWORTH | T680 |
| 3 | 1XKYD49X1PJ157981 | 2023 | KENWORTH | T680 |
| 4 | 1XKYDP9X4LJ393584 | 2020 | KENWORTH | T680 |
| 5 | 1XKYD49X3PJ157982 | 2023 | KENWORTH | T680 |
| 6 | 1XKYD49X2PJ157987 | 2023 | KENWORTH | T680 |
| 7 | 1XPCD40X3SD741985 | 2025 | PETERBILT | 567 |
| 8 | 1XPCD40X5VD829084 | 2027 | PETERBILT | 567 |
| 9 | 1XKYD49X7PJ157984 | 2023 | KENWORTH | T680 |
| 10 | 1XKYD49X3NJ155940 | 2022 | KENWORTH | T680 |
| 11 | 1XKYDP9X9KJ370929 | 2019 | KENWORTH | T680 |
| 12 | 1XKYDP9X7KJ370928 | 2019 | KENWORTH | T680 |
| 13 | 1XKYD49X1PJ157978 | 2023 | KENWORTH | T680 |
| 14 | 1XKYD49X9PJ157985 | 2023 | KENWORTH | T680 |
| 15 | 1XKYD49X0PJ157986 | 2023 | KENWORTH | T680 |
| 16 | 1XPCD40X5SD741986 | 2025 | PETERBILT | 567 |
| 17 | 1XPCD40X6TD789952 | 2026 | PETERBILT | 567 |
| 18 | 1XKYDP9XXLJ393587 | 2020 | KENWORTH | T680 |
| 19 | 1XKYD49X5NJ155938 | 2022 | KENWORTH | T680 |
| 20 | 1XKYD49X7NJ155939 | 2022 | KENWORTH | T680 |
| 21 | 1XPCD40X5TD789957 | 2026 | PETERBILT | 567 |
| 22 | 1XKYDP9X8LJ393586 | 2020 | KENWORTH | T680 |
| 23 | 1XKYD49X5NJ155941 | 2022 | KENWORTH | T680 |
| 24 | 1XKYD49X3PJ157979 | 2023 | KENWORTH | T680 |
| 25 | 1XKYD49XXPJ157980 | 2023 | KENWORTH | T680 |
| 26 | 1XKYDP9X1LJ393588 | 2020 | KENWORTH | T680 |
| 27 | 1XPCD40X3TD789956 | 2026 | PETERBILT | 567 |
| 28 | 1XPCD40X0TD791177 | 2026 | PETERBILT | 567 |
| 29 | 1XKYD49X5PJ157983 | 2023 | KENWORTH | T680 |
| 30 | 1XKYDP9X2LJ393583 | 2020 | KENWORTH | T680 |
| 31 | 1XKYD49XXPJ157977 | 2023 | KENWORTH | T680 |
| 32 | 1XKYDP9X6LJ393585 | 2020 | KENWORTH | T680 |
| 33 | 1XPCD40X1TD789955 | 2026 | PETERBILT | 567 |

Source and preservation details are on the first page of this exhibit. Entry numbering follows the returned source order.

## September 25 Kodiak disclosure

**Selected factual summary of Kodiak AI, Inc.'s September 25, 2026 company announcement.**

Kodiak reported that, as of June 30, its system was integrated into 35 Atlas-owned and operated driverless trucks, with more than 40,000 cumulative hours of paid driverless operation. It described daily Dallas-Houston preparation trips with an observer who did not intervene, and targeted unsupervised long-haul launch by year end. The 35-truck figure concerns the Atlas population and is not added to the Texas roster because overlap has not been established.

Official announcement: https://investors.kodiak.ai/news-releases/news-release-details/kodiak-ai-names-dallas-houston-long-haul-driverless-launch-lane

Official PDF: https://investors.kodiak.ai/node/8676/pdf

The motion compares this June 30 figure, disclosed September 25, with the March 10 figure of 20 Kodiak trucks cited in FMCSA's September 21 response at page 8. The populations and dates are stated so the agency can reconcile the current eligible fleet.

This page summarizes selected company statements and provides the original source links. It does not reproduce the complete press release.