**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

**No. 26-2838**

KOSTAS GIANNOULIAS,
*Petitioner,*
v.
FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION,
*Respondent.*

# PETITIONER'S RESPONSE IN OPPOSITION TO RESPONDENT'S CROSS-MOTION TO DISMISS THE PETITION FOR REVIEW

## PRELIMINARY STATEMENT

The Supreme Court addressed this timing problem almost exactly last Term. A federal agency issues an order lasting only three months; the order expires while judicial review is pending; and the agency will impose the same kind of legal treatment again. In *FCC v. Consumers' Research*, 606 U.S. 656, 671 n.1 (2025), the Court held that such a controversy is not moot. Three months is too short for complete judicial review, and a reasonable expectation of recurrence is enough. The doctrine turns on the nature of the agency's recurring conduct—not on whether the challenger somehow obtained final appellate review before the agency's short clock ran out. *Id.*

FMCSA's record is stronger than the recurrence showing in *Consumers' Research*. The Agency issued four consecutive three-month warning-device waivers, creating one uninterrupted year of federal dispensation and state-law preemption. Waiver No. 4 expressly declared that, absent one of three specified

events, "this waiver will be reissued." Dkt. 2 at 36. Respondent previously told this Court that Waiver No. 4 was "not materially different" from the prior waivers. Dkt. 6 at 2. And the October 2026 exemption order now says that FMCSA "incorporated these precise waiver limitations into the terms and conditions of this exemption." 91 Fed. Reg. 64,736, 64,738 (Oct. 9, 2026). That is a documented course of repetition and continuation, not conjecture. FMCSA cannot convert Congress's three-month ceiling into three-month immunity from review.

The exemption does not erase this case. It did not terminate Waiver No. 4; the two authorizations overlapped from October 7 through October 9. The exemption continues the same core substitute-beacon regime under a different statutory vehicle, while Petitioner's separate petition, No. 26-3170, preserves review of that later order on its own record. And Waiver No. 4 still requires each participating carrier to submit its complete term report within thirty calendar days after the term ended—November 8, 2026. Dkt. 2 at 39. The Agency is therefore still administering the challenged waiver and its safety-monitoring conditions even as Respondent asks this Court to treat the waiver as a legal nullity.

The public record independently defeats dismissal. If the Court concludes otherwise, it should not grant Respondent's request to leave an unreviewed agency order intact. The established alternative is vacatur of the challenged order and remand to the Agency. The cross-motion should be denied.

## BACKGROUND

### A. The petition challenges a serial waiver program designed to outlast review.

FMCSA issued four consecutive waivers under 49 U.S.C. § 31315(a): October 10, 2025 through January 9, 2026; January 10 through April 9, 2026; April 10 through July 9, 2026; and July 10 through October 9, 2026. Each allowed covered Level 4 commercial motor vehicles to substitute cab-mounted beacons for warning devices otherwise required by 49 C.F.R. §§ 392.22(b), 393.25(e), and 393.95(f). Each also displaced inconsistent state requirements while in force. See 49 U.S.C. § 31315(d); Dkt. 2 at 41.

Waiver No. 4 remained open to additional eligible carriers throughout its term. A carrier could begin covered operations after FMCSA acknowledged its notice—or after one business day—and a carrier that had participated before did not need to notify the Agency again. Dkt. 2 at 36–37. Most important for recurrence, the order stated prospectively that it "will be reissued" unless a carrier violated its terms, submitted a prescribed safety notification, or FMCSA found a safety deficiency. *Id.* at 36.

The petition did not challenge an isolated calendar interval. It challenged FMCSA's serial reissuance and expressly asked this Court to act "sufficiently to prevent the short-duration order and its promised reissuance from evading effective review." Dkt. 1-1 at 3–4. Petitioner also moved immediately for an emergency stay. Dkt. 2. The present controversy is therefore the one pleaded from the outset: a

recurring three-month agency authorization whose own text promised the next iteration before a normal petition could be decided.

**B. The five-year exemption carried the challenged operational regime forward; it did not retroactively terminate Waiver No. 4.**

FMCSA made the later exemption effective October 7, 2026. 91 Fed. Reg. at 64,736. Waiver No. 4 remained effective through 11:59 p.m. on October 9. Dkt. 2 at 36. The orders thus overlapped for three days. The exemption contains no rescission of Waiver No. 4 and no statement that it extinguished duties triggered by operations during the waiver term. Respondent's assertion that the later order "superseded" the waiver, Dkt. 20 at 1, cannot replace the operative text.

Nor did FMCSA treat the exemption as a clean break in substance. Its final order states that the Agency "incorporated these precise waiver limitations into the terms and conditions of this exemption." 91 Fed. Reg. at 64,738. The exemption continues the central legal treatment: covered Level 4 CMVs may use specified cab-mounted beacons instead of the normally required roadside warning devices, subject to opt-in and reporting conditions and nationwide preemptive effect. *Id.* at 64,737–41. The later order has a separate administrative record and is separately challenged; but its continuation of the same core regime confirms, rather than defeats, the reasonable expectation that Petitioner will again face the challenged treatment.

### C. FMCSA continues to administer Waiver No. 4's reporting conditions.

Waiver No. 4 requires every participating carrier, not later than thirty calendar days after the term ends, to report the number of covered CMVs, miles traveled, beacon activations, locations and road types, reasons for activation, malfunctions or power issues, mounting locations, equipment variations, and performance differences. Dkt. 2 at 39. The due date is November 8, 2026. The waiver also required five-day crash reports and safety notifications during the term. *Id.* at 38–40. These obligations are the mechanism by which FMCSA was supposed to decide whether the waiver's promised reissuance conditions were satisfied.

The final exemption order publicly identifies only aggregate data from Waiver No. 1—34 trucks, more than 500,000 miles, and nearly ten hours of beacon activation. 91 Fed. Reg. at 64,738. When Advocates for Highway and Auto Safety requested the waiver term reports themselves, FMCSA did not produce them; it stated that Aurora had designated the reports as confidential business information. *Id.* The order is silent about the full reports for Waivers Nos. 2 and 3, and the Waiver No. 4 report was not yet due. That silence does not establish what the Agency received or considered. It does establish that the public materials do not support Respondent's effort to treat all waiver administration as complete.

## ARGUMENT

## I. THE CONTROVERSY IS CAPABLE OF REPETITION YET EVADING REVIEW.

A dispute is not moot when "the challenged action is in its duration too short to be fully litigated prior to cessation or expiration" and "there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 170 (2016) (quotation omitted). Both elements are established here.

### A. A three-month agency order necessarily evades complete review.

*Consumers' Research* resolves the first element. There, an FCC contribution factor remained in force for only three months. The Supreme Court held that this was "too short to allow the controversy to be fully litigated before the factor expires." 606 U.S. at 671 n.1. It rejected the contention that the challengers forfeited the exception by not moving for preliminary relief: the inquiry concerns "the nature of the controversy," not the challenger's litigation choices. *Id.*

Waiver No. 4 had the same three-month duration. Petitioner nevertheless did exactly what Respondent says was absent in *Protestant Memorial Medical Center, Inc. v. Maram*, 471 F.3d 724, 730–32 (7th Cir. 2006): he sought emergency relief, asked for expedited treatment, and identified the evasion problem in the petition itself. Dkt. 1-1 at 4; Dkt. 2. But under *Consumers' Research*, even those efforts are

more than the Constitution requires. No ordinary petition for review can proceed from filing through record preparation, merits briefing, decision, and any further review inside a three-month window.

**B. Recurrence is demonstrated by four reissuances, an express promise, and continuing exposure—not speculation.**

The second element requires a reasonable expectation, not certainty. *Honig v. Doe*, 484 U.S. 305, 318 n.6 (1988). FMCSA has already repeated the action three times after Waiver No. 1, without interruption. Waiver No. 4 then made the next step express: absent specified conditions, it "will be reissued." Dkt. 2 at 36. Respondent supplies no declaration rescinding that commitment, disavowing another waiver, or explaining how the still-outstanding Waiver No. 4 term reports affected the reissuance criteria. Past conduct plus an unwithdrawn written promise easily clears a reasonable-expectation standard.

The later exemption does not eliminate the prospect of Waiver No. 5. It is separately reviewable and may be stayed or vacated in No. 26-3170; it is also terminable and subject to its own conditions. If the exemption is stayed, vacated, narrowed, terminated, or otherwise ceases to cover an operation, nothing in the exemption or Respondent's cross-motion forecloses FMCSA from again invoking its asserted sua sponte authority under § 31315(a) and attempting another three-month waiver. FMCSA's open opt-in structure also means Petitioner cannot know from the face of the order which Level 4 carriers are operating under federal

preemption on a given day. The outcome of No. 26-3170 is not the source of that expectation; it confirms only that the exemption is not an irrevocable statutory endpoint. Recurrence rests on FMCSA's four-waiver series, the express reissuance commitment, and Respondent's continued assertion of sua sponte waiver authority.

Petitioner's exposure is concrete and recurrent. His sworn declarations establish that he is an interstate freight driver whose spot-market work repeatedly takes him through Texas freight corridors; that during Waiver No. 4 he completed at least six trips involving Dallas, Houston, Austin, Laredo, and El Paso; that on October 2 he accepted a paid San Antonio load; that the same day he encountered an Aurora tractor-trailer on Interstate 35 near mile marker 60; and that he continues to accept suitable interstate freight. Dkt. 2, Decl. ¶¶ 2–9; Dkt. 10, Supp. Decl. ¶¶ 2–7. The same person, roads, equipment class, and federal substitution remain at issue. Article III does not require him to predict the next truck's unit number or opt-in date before the Agency's own recurring order can be reviewed.

This is also why Respondent's "precisely the same treatment" formulation is too rigid. Dkt. 20 at 6. The Supreme Court in *Consumers' Research* did not require the same quarterly factor or the same calendar dates; it required another factor imposed through the same recurring mechanism. 606 U.S. at 671 n.1. Likewise, *SEC v. Sloan*, 436 U.S. 103, 108–10 (1978), reviewed a series of successive ten-day agency suspension orders after the individual orders had expired. FMCSA's

position would make serial short-duration orders less reviewable as they become more repetitive. The doctrine exists to prevent that result.

### C. A replacement that preserves the challenged treatment does not moot the controversy.

The Seventh Circuit has recognized that expiration of a temporary rule does not moot a challenge where there is a concrete basis for reenactment and a replacement is identical in material respects. *Wisconsin Right to Life, Inc. v. Barland*, 751 F.3d 804, 839 n.22 (7th Cir. 2014). The Supreme Court likewise rejects mootness where a government repeals one measure but replaces it with another that disadvantages the challenger "in the same fundamental way." *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 662 (1993).

FMCSA used a different statutory mechanism for the five-year exemption, and Petitioner is not asking this Court to decide that new order's merits on Waiver No. 4's record. But mootness looks to practical continuity. FMCSA itself supplied the link: it "incorporated these precise waiver limitations" into the exemption. 91 Fed. Reg. at 64,738. Respondent cannot simultaneously characterize the exemption as a wholly different controversy and rely on it as the seamless substitute that supposedly ended the waiver controversy. The new order's separate merits record belongs in No. 26-3170; its continuation of the same core legal treatment belongs in the present jurisdictional analysis.

## II. RESPONDENT'S AUTHORITIES CONFIRM THAT THIS SERIAL, EXPRESSLY RECURRING ORDER IS NOT MOOT.

*Commodity Futures Trading Commission v. Board of Trade of City of Chicago*, 701 F.2d 653 (7th Cir. 1983), is particularly instructive—but not in the way Respondent suggests. That decision distinguished relief limited to one expired delivery cycle from a broader injunction against the Commission's future use of the same unapproved procedure. *Id.* at 655–56. The broader request survived the cycle's expiration. *Id.* The controversy became moot only after a later rule closed the relevant procedural gap and recurrence had become unlikely. *Id.* Petitioner's petition expressly requested relief sufficient to prevent the short-duration order "and its promised reissuance" from evading review. Dkt. 1-1 at 4. And the exemption does not prohibit FMCSA from issuing another waiver; it preserves the core regime under a longer authorization. This case falls on the surviving side of *Board of Trade*'s line.

*Protestant Memorial* is different for three independent reasons. The pending replacement plan there used a different reimbursement formula; the record lacked the details needed to show recurrence; and the challenger conceded it would not receive precisely the same treatment. 471 F.3d at 730–32. Here, Respondent already admitted that Waiver No. 4 was "not materially different" from its predecessors, Dkt. 6 at 2; Waiver No. 4 promised reissuance; and FMCSA says the exemption incorporated the waiver's precise limitations. Moreover, any suggestion

in *Protestant Memorial* that a challenger must seek preliminary relief cannot survive the Supreme Court's express clarification in *Consumers' Research*. 606 U.S. at 671 n.1. Petitioner sought emergency relief in any event.

*Burke v. Barnes*, 479 U.S. 361, 363 (1987), involved an enactment that had expired and become a dead letter. *Federation of Advertising Industry Representatives, Inc. v. City of Chicago*, 326 F.3d 924, 929 (7th Cir. 2003), involved repeal without concrete evidence that the same challenged restriction would return. Neither involved four consecutive orders, an express "will be reissued" clause, a pending post-term reporting process, and a successor order that the agency says incorporated the precise waiver limitations. This record is *Sloan*, not *Burke*.

## III. THE AGENCY'S CONTINUING CONTROL OF THE WAIVER REPORTS CANNOT BE USED TO DEFEAT REVIEW.

Petitioner agrees that the waiver's merits must ultimately be tested against the proper agency record. But Respondent's cross-motion presents a jurisdictional question, and mootness necessarily turns on post-filing events. The Court may therefore consider later facts bearing on recurrence and continuing administration. See *FBI v. Fikre*, 601 U.S. 234, 241–43 (2024). Respondent itself relies on a post-waiver event, the October 2026 exemption, as the central premise of dismissal. It cannot invoke later facts to establish mootness while demanding that Petitioner ignore later facts showing recurrence and continuing administration.

The public exemption order confirms that Advocates requested the waiver term reports and FMCSA withheld them because Aurora designated them CBI. 91 Fed. Reg. at 64,738. The Agency's own order required complete term reports after Waivers Nos. 1, 2, and 3, and requires the Waiver No. 4 report by November 8. Dkt. 2 at 39. Those reports bear directly on the conditions FMCSA wrote into its promise of reissuance: violations, safety notifications, and safety deficiencies. Confidential treatment may affect public filing or require sealed treatment; it does not make agency-held evidence irrelevant to Article III.

The certified list and record are now due November 18. Dkt. 25. On the present motion, however, the public record is enough: four consecutive waivers; materially unchanged treatment; express prospective reissuance language; continuing exposure; an overlapping successor order; and an incomplete post-term reporting process. The absence of the Agency-controlled record cannot be converted into an inference against Petitioner. If the Court concludes that a particular jurisdictional fact requires confirmation, it may direct a targeted filing or submission. It should not dismiss based on silence in materials FMCSA has not yet certified and, in part, has withheld from public inspection.

## IV. IF THE COURT FINDS THE PETITION MOOT, IT SHOULD VACATE THE UNREVIEWED WAIVER AND REMAND.

Even if the Court concludes that the controversy ended while review was pending, Respondent's requested bare dismissal is not the proper disposition.

When intervening mootness prevents judicial review of an administrative order, the ordinary course is to vacate or set aside that unreviewed order and remand so it cannot retain legal consequences merely because its short term expired. *A.L. Mechling Barge Lines, Inc. v. United States*, 368 U.S. 324, 329–31 (1961); *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–41 (1950).

Petitioner did not abandon review or allow the case to languish. He petitioned, requested emergency relief, and warned that the promised reissuance would outrun appellate review. FMCSA then allowed Waiver No. 4 to reach its scheduled end after making the separate exemption effective. If that sequence mooted the petition, equity does not permit the Agency to retain an unreviewed Waiver No. 4 as the final link in the series and as an acknowledged template for the successor regime. At an absolute minimum, the Court should vacate Waiver No. 4 and remand rather than grant a bare dismissal.

**CONCLUSION**

The Court should deny Respondent's cross-motion to dismiss and permit the petition for review to proceed. Alternatively, if the Court concludes that the petition became moot while review was pending, it should vacate Waiver No. 4 and remand to FMCSA, together with any other relief the Court deems appropriate.

October 26, 2026

Respectfully submitted,

/s/ Kostas Giannoulias
KOSTAS GIANNOULIAS
Petitioner, pro se
3851 Mission Hills Road, Unit 210
Northbrook, Illinois 60062
kostas@haasefreightsystems.com
(708) 772-6738

## CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) because it contains 2,933 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f). This response complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it was prepared in a proportionally spaced, 14-point Times New Roman typeface.

/s/ Kostas Giannoulias
KOSTAS GIANNOULIAS

## CERTIFICATE OF SERVICE

I certify that on October 26, 2026, I electronically filed the foregoing Petitioner's Response in Opposition to Respondent's Cross-Motion to Dismiss the Petition for Review with the Clerk of the United States Court of Appeals for the Seventh Circuit using the Court's CM/ECF system. All counsel of record are registered CM/ECF users and will be served by the system.

/s/ Kostas Giannoulias
KOSTAS GIANNOULIAS